UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| K. ERIC MARTIN, et al., <br>     Plaintiffs, <br> <br> v. <br> <br> WILLIAM EVANS et al., <br>     Defendants. | Civil Action No. 1:16-cv-11362-PBS <br> <br> **ORAL ARGUMENT REQUESTED** |

**DISTRICT ATTORNEY DANIEL F. CONLEY'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, District Attorney Daniel F. Conley respectfully submits this statement of material facts of record as to which, he contends, there is no genuine issue to be tried.

### I. Plaintiff K. Eric Martin and His Past Recordings of Police Officers

1. Plaintiff K. Eric Martin is a resident of Boston who, by his own description, seeks to hold police officers accountable for their actions.[1]

2. Mr. Martin is aware of the two-party consent provision of Mass. G.L. c. 272, § 99, and understands it not to apply to video recording that does not include an audio component.[2]

#### A. Mr. Martin's Past Recordings of Police Officers Generally

3. Mr. Martin has openly recorded a police officer in Massachusetts on approximately thirty occasions, many of which have depicted the officer interacting with some third party.[3]

---

[1] Depo. of K. Eric Martin (excerpts attached to MSJ at Tab 1) at 38:3-15; Tab 2 (Martin Exh. 2) at 8.
[2] Tab 1 (Martin Depo.) at 39:20-40:8.
[3] Tab 1 (Martin Depo.) at 50:11-51:15; Tab 2 (Martin Exh. 2) at 10-13.

4. When Mr. Martin has recorded an interaction between an officer and a third party, he commonly has not known the nature of that interaction before beginning to record it.[4]

5. When Mr. Martin has recorded an interaction involving a police officer, he sometimes has recorded the statements of a passer-by who was not interacting with the officer.[5]

6. Mr. Martin claims often to have felt intimidated by a police officer's words or actions while he was openly recording the officer, including where the officer: turned around to look at him;[6] waved at him;[7] addressed him by saying "doing your due diligence?" and flashing him a thumbs-up;[8] and asked him jokingly to "make sure you get my good side."[9]

7. Of the approximately thirty occasions on which Mr. Martin has openly recorded a police officer in Massachusetts:

   a. On no occasion was Mr. Martin threatened with arrest;[10]

   b. On no occasion was Mr. Martin actually arrested.[11]

   c. Twice, an officer instructed Mr. Martin to stop recording;[12]

   d. Once, on March 9, 2018 (one of the two occasions mentioned in paragraph 7(c)), an officer attempted to seize Mr. Martin's recording device;[13]

---

[4] Tab 1 (Martin Depo.) at 134:12-135:10, 139:1-14, 141:22-142:4, 145:14-146:2, 146:24-147:14, 166:17-168:2, 213:19-215:19; Tab 6 (Martin Exh. 11).
[5] Tab 1 (Martin Depo.) at 140:2-141:20; Tab 5 (Martin Exh. 10).
[6] Tab 1 (Martin Depo.) at 97:9-98:15, 102:4-7; Tab 2 (Martin Exh. 2) at 11; Tab 3 (Martin Exh. 5), "Martin0000055.mov" at 00:17 - 00:22; Tab 4 (Martin Exh. 7).
[7] Tab 1 (Martin Depo.) at 209:10-210:15; Tab 2 (Martin Exh. 2) at 11; Tab 3 (Martin Exh. 5), "Martin0000047.mov" at 01:33 - 01:38.
[8] Tab 1 (Martin Depo.) at 130:7-131:1; Tab 2 (Martin Exh. 2) at 12-13; Tab 3 (Martin Exh. 5), "Martin0000022.mov" at 00:08 - 00:13.
[9] Tab 1 (Martin Depo.) at 208:17-209:9; Tab 2 (Martin Exh. 2) at 12; Tab 3 (Martin Exh. 5), "Martin0000029.mov" at 00:39 - 00:50.
[10] Tab 1 (Martin Depo.) at 60:3-8.
[11] Tab 1 (Martin Depo.) at 60:9-13.
[12] Tab 1 (Martin Depo.) at 51:21-52:22.
[13] Tab 1 (Martin Depo.) at 58:9-19.

  e.  Once (the same occasion), an officer threatened Mr. Martin with physical violence;[14] and

  f.  Once (the same occasion), an officer made physical contact with Mr. Martin.[15]

 8. On the other occasion mentioned in paragraph 7(c), Mr. Martin was standing on a sidewalk immediately adjacent to Dewey Square on December 10, 2011, openly recording the dismantlement of the Occupy Boston encampment, when then-Boston Police Chief Daniel Linskey approached him and said "I'm going to have to ask you to stop recording and I may have to ask you to go over there," and pointed across the street.[16]

 9. Most of Mr. Martin's dealings with the police cause him to feel fearful and nervous.[17]

 10. Mr. Martin can identify only "a few" interactions he has ever had with a police officer that have not caused him to feel that way.[18]

 11. Mr. Martin has never made a formal complaint to any police agency relating to something that an officer said or did while he was recording the officer.[19]

### B. Mr. Martin's Interaction With a Police Officer on March 9, 2018

 12. On the March 9, 2018 occasion described in paragraph 7(c), Mr. Martin was walking on Hyde Park Avenue when he came across a solid black Jeep, with its windows rolled up, that lacked markings except for a sticker. In the driver's seat of the Jeep was a man wearing a bright neon green jacket who appeared to be sleeping.[20]

---

[14] Tab 1 (Martin Depo.) at 60:14-23.
[15] Tab 1 (Martin Depo.) at 62:5-12, 260:5-18.
[16] Tab 1 (Martin Depo.) at 51:21-52:9, 86:7-88:15, 244:2-245:8.
[17] Tab 1 (Martin Depo.) at 194:18-23; Tab 2 (Martin Exh. 2) at 17-18.
[18] Tab 1 (Martin Depo.) at 194:24-195:19.
[19] Tab 1 (Martin Depo.) at 189:13-19.
[20] Tab 1 (Martin Depo.) at 180:11-181:24, 182:13-14, 249:8-12.

13. Although Mr. Martin deduced that the man was a police officer, he did not know whether the officer was on duty at the time.[21]

14. From his position on the sidewalk adjacent to the Jeep, Mr. Martin began to record the sleeping man.[22]

15. After a few minutes, Mr. Martin left the scene. When he returned some 30-40 minutes later, the man was in the same place and still appeared to be asleep. Mr. Martin resumed recording him from the sidewalk.[23]

16. This time, the man awoke while Mr. Martin was recording, got out of the Jeep, and grabbed Mr. Martin's hand and telephone.[24]

### C. The Boston Common Recordings

17. In response to D.A. Conley's requests for production of documents in this case, Mr. Martin's counsel produced four video files entitled, respectively, MARTIN0000031.mov, MARTIN0000032.mov, MARTIN0000033.mov, and MARTIN0000034.mov (collectively, the "Boston Common Recordings").[25]

18. The Boston Common recordings appear to have been made on Boston Common adjacent to Tremont Street.[26] They depict, among other things, an interaction between police

---

[21] Tab 1 (Martin Depo.) at 182:8-183:10, 249:13-16.
[22] Tab 1 (Martin Depo.) at 183:11-184:13, 186:21-187:12, 249:17-20; Tab 11 (Martin Exh. 23).
[23] Tab 1 (Martin Depo.) at 253:16-254:14, 256:1-5.
[24] Tab 1 (Martin Depo.) at 256:6-11.
[25] Affidavit of AAG Eric A. Haskell (attached to MSJ at Tab 20) at ¶¶ 2-3.
[26] Tab 20 (Haskell Aff.) at ¶ 4; Tab 3 (Martin Exh. 5),"MARTIN0000031.mov," "MARTIN0000032.mov," "MARTIN0000033.mov," & "MARTIN0000034.mov."

officers and a man in a Patriots jersey,[27] as well as portions of the conversations of several passers-by who were not interacting with any police officer.[28]

20. 19. When the Boston Common Recordings were played for Mr. Martin at his deposition, he refused to testify in response to any questions about them, instead invoking the Fifth Amendment privilege.[29]

20. Mr. Martin's assertions of the Fifth Amendment privilege support the following inferences about the Boston Common Recordings:[30]

    a. Mr. Martin made each of the Boston Common Recordings;[31]

    b. When he made the Boston Common Recordings, Mr. Martin was not holding his recording device in plain view;[32]

    c. Mr. Martin did not know the nature of the interaction between the officers and the man in the Patriots jersey before beginning to record that interaction;[33] and

    d. Mr. Martin did not know the passers-by whose conversations are depicted in the Boston Common Recordings, nor did he have their permission to record those conversations.[34]

---

[27] Tab 20 (Haskell Aff.) at ¶ 4; Tab 3 (Martin Exh. 5),"MARTIN0000031.mov" at 00:00 - 00:58, "MARTIN0000032.mov" at 00:00 - 01:46 "MARTIN0000033.mov" at 00:29 - 01:20.

[28] Tab 20 (Haskell Aff.) at ¶ 4; Tab 3 (Martin Exh. 5), "MARTIN0000032.mov" at 00:31 - 00:34 & "MARTIN0000034.mov" at 00:38 - 00:45; Tab 7 (Martin Exh. 14); Tab 8 (Martin Exh. 20).

[29] Tab 20 (Haskell Aff.) at ¶¶ 6-7; Tab 1 (Martin Depo.) at 147:19-163:22.

[30] D.A. Conley has filed a Motion to Draw Adverse Inferences (#115) in which he requests that the Court draw these inferences.

[31] Tab 1 (Martin Depo.) at 162:19-163:15.

[32] Tab 1 (Martin Depo.) at 149:21-150:2, 151:24-152:7, 162:11-18.

[33] Tab 1 (Martin Depo.) at 150:6-151:1, 153:9-20; Tab 7 (Martin Exh. 12); Tab 8 (Martin Exh. 14).

[34] Tab 1 (Martin Depo.) at 153:21-155:4, 161:1-162:10; Tab 8 (Martin Exh. 14); Tab 9 (Martin Exh. 20).

**D. The Arizona BBQ Recordings**

21.     In response to D.A. Conley's requests for production of documents in this case, Mr. Martin's counsel produced two video files entitled, respectively, MARTIN0000027.mov and MARTIN0000028.mov (collectively, the "Arizona BBQ Recordings").[35]

22.     The Arizona BBQ Recordings appear to have been made from a sidewalk just outside of the Arizona BBQ restaurant.[36] They depict, among other things, a police officer entering the restaurant and interacting with its occupants,[37] as well as a foreign-language conversation between two men occurring nearby that is not related to the police officer.[38]

23.     When the Arizona BBQ Recordings were played for Mr. Martin at his deposition, he refused to testify in response to any questions about them, instead invoking the Fifth Amendment privilege.[39]

24.     Mr. Martin's invocations of the Fifth Amendment privilege support the following inferences about the Arizona BBQ Recordings:[40]

    a.     Mr. Martin made both of the Arizona BBQ Recordings;[41]

    b.     When he made the Arizona BBQ Recordings, Mr. Martin was not holding his recording device in plain view;[42]

---

[35] Tab 20 (Haskell Aff.) at ¶¶ 2-3.
[36] Tab 20 (Haskell Aff.) at ¶ 5; Tab 3 (Martin Exh. 5), "MARTIN0000027.mov" & "MARTIN0000028.mov."
[37] Tab 20 (Haskell Aff.) at ¶ 5; Tab 3 (Martin Exh. 5), "MARTIN0000027.mov" at 00:18 - 01:56; Tab 10 (Martin Exh. 22).
[38] Tab 20 (Haskell Aff.) at ¶ 5; Tab 3 (Martin Exh. 5), "MARTIN0000028.mov" at 00:27 - 00:42.
[39] Tab 20 (Haskell Aff.) at ¶¶ 6-7; Tab 1 (Martin Depo.) at 170:7-179:22.
[40] D.A. Conley has filed a Motion to Draw Adverse Inferences (#115) in which he requests that the Court draw these inferences.
[41] Tab 1 (Martin Depo.) at 170:15-171:1, 176:20-177:10.
[42] Tab 1 (Martin Depo.) at 174:3-16, 178:23-179:4.

  c. Mr. Martin did not know the nature of the interaction between the officer and the people in the restaurant before beginning to record that interaction;[43]

  d. A restaurant like the Arizona BBQ is within the scope of a "public place" as Mr. Martin defines it for this litigation;[44] and

  e. Mr. Martin did not know the men whose foreign-language conversation is depicted in the Arizona BBQ Recordings, nor did he have their permission to record that conversation.[45]

## II. Plaintiff Rene Perez and His Past Recordings of Police Officers

25. Plaintiff Rene Perez is a resident of Boston and, by his own description, a civil rights activist.[46]

26. Mr. Perez has openly recorded a police officer in Massachusetts on approximately eighteen occasions. In contrast to Mr. Martin, most of Mr. Perez's past recordings have been occasioned by demonstrations or protests.[47]

27. Mr. Perez began to participate in civil rights protests in 2003 and continued to do so through 2015.[48]

28. While participating in those protests, Mr. Perez routinely recorded the police and live streamed his recordings by broadcasting them to the internet at the same time he was making them.[49] He did so to track the police's location(s) and sent out a tweet every time he did so.[50]

29. On one occasion while a protest was going on elsewhere in Boston, Mr. Perez followed a team of police officers as they disembarked from a bus and gathered in the Bowdoin

---

[43] Tab 1 (Martin Depo.) at 171:9-172:10, 173:15-174:2, 179:5-16.
[44] Tab 1 (Martin Depo.) at 174:17-175:11; see also Tab 2 (Martin Exh. 2) at 10.
[45] Tab 1 (Martin Depo.) at 178:4-16, 179:17-22.
[46] Depo. of Rene Perez (excerpts attached to MSJ at Tab 12) at 16:13-15, 18:7-9.
[47] Tab 13 (Perez Exh. 2) at 9-10.
[48] Tab 12 (Perez Depo.) at 21:22-22:21, 56:16-18.
[49] Tab 12 (Perez Depo.) at 82:10-84:14, 119:17-18, 146:5-11, 181:19-20.
[50] Tab 12 (Perez Depo.) at 83:10-21.

MBTA station.  There, Mr. Perez initiated a conversation with one officer about the officers' business there.  Mr. Perez was recording all along and livestreaming that recording.[51]

30.     On another occasion, Mr. Perez participated in a march that descended a ramp and entered the roadway of Interstate 90 in Boston.  There, a police officer told Mr. Perez to "turn around and keep going."  Mr. Perez did not turn around and, after taking several backward steps in the direction indicated by the officer, walked back toward the officer's location.  Mr. Perez was recording all along and livestreaming that recording.[52]

31.     On yet another occasion, Mr. Perez was part of a large group of protestors that hurled itself into a shoulder-to-shoulder rank of Chicago police officers dressed in riot gear.  Mr. Perez was recording all along and livestreaming his recording.[53]

32.     And, in Boston, Mr. Perez participated in a march outside the home of then-Secretary of State John Kerry, during which one of the march's participants "banged on the door."  Mr. Perez remained behind after the march had left and, when a police officer sought to disperse two other stragglers, Mr. Perez began to record the encounter and physically inserted himself between the officer and the two stragglers.[54]

### III.     Both Plaintiffs' Prospective Surreptitious Recordings of Police Officers

33.     The plaintiffs seek an injunction forbidding the enforcement of Mass. G.L. c. 272, § 99, against the surreptitious recording of police officers engaged in their official duties while in

---

[51] Tab 12 (Perez Depo.) at 117:18-118:10, 119:17-18, 132:23-135:14; Tab 15 (Perez Exh. 8), "PEREZ0000009.mp4" at 06:30-07:50; Tab 16 (Perez Exh. 15).
[52] Tab 12 (Perez Depo.) at 141:10-147:2; Tab 15 (Perez Exh. 8), "PEREZ0000003.mp4".
[53] Tab 12 (Perez Depo.) at 174:20-175:20, 181:19-20, 193:4-17; Tab 15 (Perez Exh. 8), "PEREZ0000004.mp4"; Tab 19 (Perez Exh. 30).
[54] Tab 12 (Perez Depo.) at 101:16-19, 148:4-149:22, 151:15-154:7; Tab 15 (Perez Exh. 8), "PEREZ0000006.mp4"; Tab 17 (Perez Exh. 19); Tab 18 (Perez Exh. 20).

public places,[55] with "public place" defined to mean "streets, sidewalks, parks and MBTA stations," as well as "other publically accessible indoor or outdoor locations that are open to the general public without locked doors or key cards or permission."[56]

34. Mr. Martin believes that the opportunity to surreptitiously record a police officer might arise at any time, in any number of situations, and in any number of places.[57]

35. Mr. Martin refused to rule out recording a one-on-one interaction with a police officer that he initiates, or conversations that involve a plainclothes officer.[58]

36. Mr. Martin has no present intention to surreptitiously record, in Massachusetts, any particular police officer, in a particular place, saying or doing a particular thing, while making the recording in a particular manner.[59]

37. Mr. Martin has no present intention to surreptitiously record a police officer in public at all.[60]

38. Nor has Mr. Martin taken any steps to surreptitiously record a police officer in public, aside from engaging in litigation and routinely carrying a telephone equipped to make recordings.[61] (Mr. Martin also asserted in response to D.A. Conley's interrogatories that he carries an external battery with him "at all times I got out in public" to ensure that his telephone

---

[55] Complaint, ECF #1, at 18.
[56] Tab 2 (Martin Exh. 2) at 10.
[57] Tab 1 (Martin Depo.) at 197:16-198:20.
[58] Tab 1 (Martin Depo.) at 191:2-193:16; Tab 2 (Martin Exh. 2) at 9-10, 14, 15-16.
[59] Tab 1 (Martin Depo.) at 199:7-16.
[60] Tab 1 (Martin Depo.) at 199:24-202:8, 282:15-21.
[61] Tab 1 (Martin Depo.) at 199:17-23, 201:15-23; Tab 2 (Martin Exh. 2) at 19.

does not run out of power while recording,[62] but contradicted this assertion in his deposition testimony.[63])

39.     Mr. Perez believes that the opportunity to surreptitiously record a police officer might arise at any time, in any number of situations, and in any number of places.[64]

40.     Mr. Perez has no present intention to surreptitiously record, in Massachusetts, a particular officer, in a particular place, saying or doing a particular thing.[65]

41.     Conversely, Mr. Perez cannot identify any circumstance in which he might <u>not</u> surreptitiously record police officers performing their duties in public.[66] Specifically, Mr. Perez refused to rule out surreptitiously recording conversations: that appear to be confidential; that involve a plainclothes officer; that affect the safety of the officer or another person; that contain personal identifying information; in which Mr. Perez lies about whether he is making a recording; or where Mr. Perez uses equipment to amplify sound.[67]

42.     Mr. Perez refused to rule out surreptitiously recording an interaction between a police officer and a third party where Mr. Perez does not know the nature of that interaction before beginning to record it.[68]

43.     Mr. Perez refused to rule out intruding in an officer's conversation with a third party that Mr. Perez is recording.[69]

---

[62] Tab 2 (Martin Exh. 2) at 19.
[63] Tab 1 (Martin Depo.) at 21:20-22:13.
[64] Tab 12 (Perez Depo.) at 159:14-160:1.
[65] Tab 12 (Perez Depo.) at 223:5-10, 249:3-12.
[66] Tab 12 (Perez Depo.) at 226:4-10, 247:5-15.
[67] Tab 12 (Perez Depo.) at 168:20-24, 169:17-171:3, 174:8-13.
[68] Tab 12 (Perez Depo.) at 253:11-24.
[69] Tab 12 (Perez Depo.) at 253:19-254:11.

44. Mr. Perez refused to rule out recording a one-on-one interaction with a police officer that he initiates.[70]

45. Mr. Perez has not taken any steps to surreptitiously record a police officer in Massachusetts, aside from engaging in litigation and routinely carrying a telephone equipped to make recordings.[71]

46. Mr. Perez testified that he would live stream any surreptitious recording of a police officer that he is permitted to make.[72]

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Eric A. Haskell*
_____
Eric A. Haskell, BBO No. 665533
Matthew P. Landry, BBO No. 690441
Assistant Attorneys General
One Ashburton Place
Boston, Massachusetts  02108
617-963-2855
eric.haskell@state.ma.us

June 11, 2018

**CERTIFICATE OF SERVICE**

I certify that a copy of this document will be sent electronically by the ECF system to attorneys of record identified on the Notice of Electronic Filing.

*/s/ Eric A. Haskell*
_____
Eric A. Haskell
Assistant Attorney General

June 11, 2018

---

[70] Tab 13 (Perez Exh. 2) at 14.
[71] Tab 12 (Perez Depo.) at 222:19-223:4, 249:13-19; Tab 14 (Perez Exh. 3) at 8-9.
[72] Tab 12 (Perez Depo.) at 174:5-7.