**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

K. ERIC MARTIN and RENÉ PÉREZ,

      *Plaintiffs*,

v.

WILLIAM EVANS, in his Official Capacity as
Police Commissioner for the City of Boston,
and DANIEL F. CONLEY, in his Official
Capacity as District Attorney for Suffolk
County,

      *Defendants.*

Civil Action No. 1:16-cv-11362-PBS

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS WILLIAM EVANS AND DANIEL CONLEY

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

SUMMARY OF MATERIAL UNDISPUTED FACTS ................................................. 4

I.   The BPD and the SCDAO enforce Section 99 against individuals who secretly record police officers performing their duties in public ................................................. 4

II.  Mr. Martin and Mr. Pérez want to secretly record police officers performing their duties in public, but are afraid to do so because of Section 99. ................................. 5

ARGUMENT ................................................................................................................... 6

I.   Plaintiffs have standing because there is a credible threat that Section 99 will be enforced against them. ................................................................................................ 6

   A.   Plaintiffs have established injury in fact. ............................................................ 7

      (i)   Intent to engage in protected and proscribed conduct ................................ 7

      (ii)  Credible threat of enforcement. .................................................................. 8

   B.   Plaintiffs have established causation and redressability. ..................................... 9

II.  Section 99 violates the First Amendment as applied to the secret recording of police officers performing their duties in public because this blanket prohibition is not narrowly tailored to a significant government interest. ........................................... 9

   A.   There is no significant government interest served by the challenged application of Section 99. ..................................................................................................... 11

   B.   The challenged application of Section 99 is not narrowly tailored. .................. 13

      (i)   Police Safety and Obstruction ................................................................. 14

      (ii)  Civilian Privacy ....................................................................................... 15

   C.   The challenged application of Section 99 does not preserve adequate alternative methods of communication. ................................................................................ 17

III. The Boston Police Commissioner is liable under *Monell* due to the BPD's explicit policy of enforcing Section 99 against individuals who secretly record police officers performing their duties in public ........................................................................... 17

   A.   The BPD's policy to arrest individuals who secretly record police officers performing their public duties is a municipal policy under *Monell*. .............. 18

i

B.   The BPD's policy has caused a cognizable injury. ......................................................... 21

REQUEST FOR ORAL ARGUMENT ........................................................................................ 22

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Civil Liberties Union of Illinois v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012) ..................................................................7, 9, 10, 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................6

*Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*,
   490 F.3d 1 (1st Cir. 2007).................................................................................11, 13

*Bacon v. McKeithen*,
   No. 5:14-cv-37, 2014 WL 12479640 (N.D. Fl. Aug. 28, 2014) ......................10, 17

*Bd. of Cnty. Comm'rs of Bryan Cnty. V. Brown*,
   520 U.S. 397 (1997)................................................................................................21

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).................................................................................................9

*Commonwealth v. Hyde*,
   434 Mass. 594 (2001) .......................................................................................1, 4, 7

*Courtemanche v. General Services Admin.*,
   172 F. Supp. 2d 251 (D. Mass. 2001) ...................................................................14

*Cutting v. City of Portland, Maine*,
   802 F.3d 79 (1st Cir. 2015)...............................................................................14, 16

*Fields v. City of Philadelphia*,
   862 F.3d 353 (3rd Cir. 2017) .................................................................................10

*Garner v. Memphis Police Dept.*,
   8 F.3d 358 (6th Cir. 1993) .....................................................................................21

*Glik v. Cunniffe*,
   655 F.3d 78 (1st Cir. 2011).................................................................................1, 10

*Haley v. City of Boston*,
   657 F.3d 39 (1st Cir. 2011).....................................................................................21

*Jean v. Massachusetts State Police*,
   492 F.3d 24 (1st Cir. 2007).....................................................................................12

*Martin v. Evans*,
   241 F. Supp. 3d 276 (D. Mass. 2017) .......................................................................... passim

*McCarthy v. Nw. Airlines, Inc.*,
   56 F.3d 313 (1st Cir. 1995) ..........................................................................................6

*McCullen v. Coakley*,
   134 S. Ct. 2518 (2014) ...................................................................................13, 14, 16

*Monell v. Dep't of Soc. Serv.*,
   436 U.S. 658 (1978) ..............................................................................................3, 17

*New Hampshire Right to Life Political Action Committee v. Gardner*,
   99 F.3d 8 (1st Cir. 1996) ..............................................................................................9

*Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) ....................................................................................................17

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ....................................................................................................17

*Project Veritas Action Fund v. Conley*,
   244 F.Supp.3d 256 (D. Mass. 2017) .......................................................................1, 9

*Rideout v. Gardner*,
   838 F.3d 65 (1st Cir. 2016) ......................................................................10, 12, 13, 14

*Snyder v. King*,
   745 F.3d 242 (7th Cir. 2014) ......................................................................................18

*South Boston Allied War Veterans Council v. City of Boston*,
   875 F. Supp. 891 (D. Mass. 1995) ..............................................................................10

*Susan B. Anthony List v. Driehuas*,
   134 S. Ct. 2334 (2014) ..................................................................................................2

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994) .................................................................................................2, 3

*Turner v. Lieutenant Driver*,
   848 F.2d 678 (5th Cir. 2017) ......................................................................................10

*United States v. Grace*,
   461 U.S. 171 (1983) ......................................................................................................9

*Vives v. City of New York*,
   524 F.3d 346 (2d Cir. 2008) ............................................................................... passim

**STATUTES**

M.G.L. ch. 265 § 13D ................................................................................................14

M.G.L. ch. 268 § 13B ................................................................................................14

M.G.L. ch. 272 § 99 ...............................................................................................1, 19

M.G.L. ch. 272 § 99(B)(4) ..........................................................................................4

M.G.L. ch. 272 § 99(C)(1) .....................................................................................4, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ....................................................................................................6

## INTRODUCTION

The right to film police officers performing their duties in public "is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011). Plaintiffs Eric Martin and René Pérez have repeatedly exercised this right openly. But they also want to make such recordings in secret because they fear that in certain circumstances, openly recording police officers can trigger violence or eliminate an opportunity to accurately document unalloyed police behavior. The Massachusetts wiretap law, however, prohibits secret recording of all oral communications, including those of police performing their duties in public. *See* M.G.L. ch. 272 § 99 (Section 99); *Commonwealth v. Hyde*, 434 Mass. 594, 595 (2001). Accordingly, in this lawsuit Mr. Martin and Mr. Pérez allege that Section 99 violates the First Amendment as applied to the secret recording of police officers performing their duties in public. Summary judgment is now warranted in favor of their as-applied challenge.

This Court has already held, in denying motions to dismiss by defendants Daniel Conley and William Evans, that Section 99 is "unconstitutional as applied to the recording of government officials in the discharge of their duties in public." *Project Veritas Action Fund v. Conley*, 244 F.Supp.3d 256, 266 (D. Mass. 2017) (describing *Martin* holding); *Martin v. Evans*, 241 F. Supp. 3d 276, 286-88 (D. Mass. 2017). In so doing, this Court confirmed that the First Amendment provides a right to secretly record police officers performing their duties in public, that curtailments of that right are subject to intermediate scrutiny, and that Section 99 cannot survive intermediate scrutiny because it is not narrowly tailored to a significant government interest. *Martin*, 241 F.Supp.3d at 286-88. This Court also determined that plaintiffs had adequately pled standing and municipal liability, "easily" concluding that plaintiffs' allegations were "sufficiently specific" to reach the first conclusion, and applying the Second Circuit's

1

analysis in *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008), to reach the second. *Martin*, 241 F.Supp.3d at 281-85.

At summary judgment, the sole remaining question is whether the undisputed facts and legal doctrine bear out plaintiffs' allegations. They do.

As a threshold matter, the undisputed facts demonstrate that Mr. Martin and Mr. Pérez have standing to bring this pre-enforcement challenge. Plaintiffs have testified that they "want to secretly record police officers performing their duties in public without risking arrest and prosecution," and have detailed instances in which they have previously wanted to secretly record police officers but refrained from doing so. Defendants' records confirm that this fear is warranted. Both the Boston Police Department (BPD) and the Suffolk County District Attorney's Office (SCDAO) have pursued criminal action under Section 99 against individuals for secretly recording police officers performing their duties in public, and neither institution has disavowed such enforcement going forward. Because they have established both an intent to engage in a constitutionally-protected, statutorily-proscribed course of conduct and a credible threat of prosecution, plaintiffs have standing. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2343 (2014)**.**

 On the merits, defendants have not identified *any* significant government interest served by Section 99's prohibition on the secret recording of police officers performing their duty in public, let alone an interest to which Section 99 is narrowly tailored. For example, a prohibition on secret recording cannot advance any interest in protecting officers from interference or harm, because recording in secret cannot interfere with or harm someone who does not know about it. Similarly, although protecting the privacy of civilian communications may be "important in the abstract", *cf. Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994), defendants have not

demonstrated a government interest in protecting civilian communications with or near police officers performing their duties in public. Indeed, none of the BPD-created training materials produced in discovery includes any examples describing the application of Section 99 against the secret recording of a civilian. But even if the defendants had proved a government interest in protecting *civilians* who speak with police officers in public, they would still be unable to identify any facts showing such an interest is advanced by arresting and prosecuting people for secretly recording *police officers*. *Cf. Turner,* 512 U.S. at 664. Thus, the only application of Section 99 at issue here—its prohibition of secret recordings of police officers performing their duties in public—is not tailored to any government interest in protecting civilians.

Finally, discovery confirms that Commissioner Evans, who is sued in his official capacity, is liable under *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658 (1978).  The BPD uses all of the tools at its disposal—including e-learning videos, training bulletins and recruit training—to educate and authorize its officers to enforce Section 99 against people who secretly record officers performing their duties in public. This training instructs officers they have a "right of arrest" under Section 99 when there is probable cause of a secret recording, and encourages them to exercise this right specifically against individuals who are secretly recording police officers performing their duties in public. Because enforcing a particular criminal law is up to each police department, the BPD's "conscious choice" to favor enforcing Section 99 against people who record the police is a municipal policy for which Commissioner Evans in his official capacity is liable. *See Vives*, 524 F.3d at 352-53.

3

## SUMMARY OF MATERIAL UNDISPUTED FACTS[1]

As elaborated more fully in the argument below, the material undisputed facts are as follows:

**I.      The BPD and the SCDAO enforce Section 99 against individuals who secretly record police officers performing their duties in public.**

Section 99 imposes up to five years' incarceration on "any person who willfully commits an interception, [or] attempts to commit an interception" of any "communication," where "interception" means "to secretly hear, secretly record, or aid another to secretly hear or secretly record." M.G.L. ch. 272 § 99(B)(4) & (C)(1). Section 99 contains no exemption for secretly recording police officers performing their duties in public, *Hyde*, 434 Mass. at 595, and indeed, law enforcement officials have arrested and prosecuted numerous individuals for this behavior. SUMF ¶¶ 45-52. The BPD has applied for a criminal complaint on Section 99 charges against at least 9 individuals for secretly recording police officers performing their duties in public in the past 7 years and the SCDAO has chosen to proceed past arraignment for at least 4 individuals on similar charges during that same time. SUMF ¶¶ 48-49.

The Boston Police Academy (Academy) trains BPD recruits and provides continuing education for BPD officers in the field. SUMF ¶ 64. It is run by the Chief of the BPD's Bureau of Professional Development, who reports directly to the Commissioner. SUMF ¶ 65. The BPD has created its own training materials on Section 99, including a video (Wiretap Video), a training bulletin (Wiretap Bulletin) and a section in the primary criminal law text book for BPD recruits (Wiretap Chapter). SUMF ¶¶ 91-92, 101, 110-11.  These training materials all provide

---

[1] Pursuant to Local Rule 56.1, the material undisputed facts supporting Plaintiffs' Motion for Summary Judgment are set forth in the accompanying Statement of Undisputed Material Facts (SUMF).

examples instructing officers that they may arrest and charge someone who secretly records police officers performing their duties in public. SUMF ¶¶ 93-95, 100, 102, 111. They do not provide any examples of an individual secretly recording a civilian. SUMF ¶¶ 100, 102, 111.

Neither the BPD nor the Suffolk County District Attorney's Office has provided any data, studies, surveys or stories to demonstrate that banning secret recording of police officers performing their duties in public has any effect on protecting police safety, preventing police interference, or protecting privacy. SUMF ¶¶ 59-61.

## II.   Mr. Martin and Mr. Pérez want to secretly record police officers performing their duties in public, but are afraid to do so because of Section 99.

Mr. Martin and Mr. Pérez each want to secretly record police officers performing their duties in public without risking arrest and prosecution under Section 99. SUMF ¶¶ 9, 26. Although they can't predict the exact moments that they will want to record in the future, they each know these moments will occur based on their years of experience openly recording police officers. SUMF ¶¶ 22, 41.

Mr. Martin has wanted to secretly record police officers performing their duties in public where he was scared that the officers "might react violently or punish me if I took out my phone to openly record them." SUMF ¶ 18. He has also wanted to secretly record police officers performing their duties in public when he wanted to accurately document their "responses in a way that captured what they actually felt" when he thought "the police officers would alter their behavior and responses if [he] openly recorded them." SUMF ¶ 17. He has refrained from doing so, however. SUMF ¶¶ 9-11.

Mr. Pérez has wanted to secretly record police officers performing their duties in public where he was "afraid" that open recording "might make the police officer angry," or "that the

5

police officer may react violently or scream at me or retaliate against me." SUMF ¶ 36. He has also wanted to secretly record police officers performing their duties in public when he wanted to "more accurately capture the police officer's interaction" with him. SUMF ¶ 35.  He has refrained from doing so, however. SUMF ¶¶ 26-28.

## ARGUMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists only if specific facts—not conclusory allegations, improbable inferences, or unsupported speculation—would allow a reasonable jury to return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where, as here, "the summary judgment target bears the ultimate burden of proof," it "cannot rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir. 1995).  Under this standard, plaintiffs are entitled to summary judgment.

## I.     Plaintiffs have standing because there is a credible threat that Section 99 will be enforced against them.

At the motion to dismiss phase, this Court concluded that plaintiffs sufficiently alleged standing because their complaint sufficiently alleged (1) an injury in fact, (2) a sufficient causal connection between the injury and the challenged conduct and (3) a likelihood that the injury will be redressed by a favorable decision. *Martin*, 241 F.Supp.3d at 281-83. The undisputed facts now conclusively establish standing for the purpose of summary judgment.

**A.  Plaintiffs have established injury in fact.**

Plaintiffs have established an injury in fact because they intend to engage in a particular course of conduct but for Section 99, and face a credible threat of prosecution if they do so.

**(i)      Intent to engage in protected and proscribed conduct.** [2]

Plaintiffs' detailed and undisputed testimony stating that they want to secretly record police officers performing their duties in public, describing when they have wanted to do so in the past, and explaining why they have wanted to do so, establishes an intent to engage in this course of conduct were it not for Section 99. *Cf. Alvarez,* 679 F.3d at 593 (pre-enforcement standing where organization testified to an intent to conduct prohibited recording if it were legal to do so even though the precise conversations it would want to record in the future were unknown because "pre-enforcement suits always involve a degree of uncertainty about future events"); *Martin*, 241 F.Supp.3d at 282-83 (noting Supreme Court has not required strict "level of specificity from plaintiffs" in pre-enforcement cases).  Both Mr. Martin and Mr. Pérez have testified under oath that they want to secretly record police officers performing their duties in public without risking arrest and prosecution. SUMF ¶¶ 9, 26. Although they can't predict the exact moments that they will want to record in the future, they each know "based on [their] years of experience openly recording police officers that they will occur." SUMF ¶¶ 22, 41. This experience includes at least 26 instances of openly recording police officers for Mr. Martin and 18 instances for Mr. Pérez. SUMF ¶¶ 8, 25.

As further evidence of their desire to secretly record police officers performing their duties in public in the future, Mr. Martin and Mr. Pérez each detailed situations when they have

---

[2] There is no question that this behavior is both protected by the Constitution, *see infra* Section II, and proscribed by Section 99, *see Hyde*, 434 Mass at 595.

wanted to do so in the past, but refrained.  Mr. Martin listed 9 specific occurrences within 5 categories of such instances, and Mr. Pérez listed 10 specific occurrences within 6 categories of such instances. SUMF ¶¶ 10-16, 27-34. Plaintiffs also testified as to why they have wanted to engage in this behavior—to accurately document police officer behavior and for safety reasons, SUMF ¶¶ 17-18, 35-36—and described specific interactions that have led them to be afraid of openly recording police officers performing their duties in public, SUMF ¶¶ 19-21, 37-40. For example, when Mr. Martin openly recorded an officer while on a public sidewalk during the pendency of this case, the officer grabbed Mr. Martin's hand so hard that he sprained Mr. Martin's fingers and wrist. SUMF ¶ 21. Mr. Martin was "terrified" and said it "was one of the scariest moments in my life." SUMF ¶ 21. An officer yelled at Mr. Pérez and grabbed his recording device when he was openly recording him on the street outside of John Kerry's house after a protest, and a Chicago police officer hit Mr. Pérez twice with a baton while he was openly recording his actions during the NATO protests. SUMF ¶¶ 39-40. These and other instances have led Mr. Pérez "to be even more afraid of violent reactions to open recording in the future, particularly when I am on my own." SUMF ¶ 38.

> **(ii)** **Credible threat of enforcement.**

The record also demonstrates that plaintiffs face a credible threat of prosecution if they secretly record police officers performing their duties in public. At oral argument on defendants' motions to dismiss, both defendants stated "that they do not disavow enforcement of Section 99 against persons like the plaintiffs," *Martin*, 241 F.Supp.3d at 283, and their position has not altered in the intervening months. What has changed is that the record now reveals that the BPD has applied for a criminal complaint on Section 99 charges against at least 9 individuals for secretly recording police officers performing their duties in public in the past 7 years.  SUMF ¶

49. The Suffolk County District Attorney has opened case files for at least 11 individuals including the same charge for the same reason during this period, pursuing arraignment for at least 4. SUMF ¶¶ 46-48. These facts confirm that "Section 99 is alive and well," and that there is therefore "a credible threat of enforcement against the plaintiffs. *Martin*, 241 F.Supp.3d at 283.

### B.  Plaintiffs have established causation and redressability.

Finally, causation and redressability "are not legitimately [at] issue here." *New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 13(1st Cir. 1996). Causation is not too attenuated because the chilling of plaintiffs' constitutionally protected right to record police officers performing their duties in public stems directly from defendants' threat of enforcement against the plaintiffs themselves. *Martin*, 241 F.Supp.3d at 283 (contrasting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) with this case). This injury is also redressable: "when a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it." *New Hampshire Right to Life*, 99 F.3d at 13. As this Court already held, redressability is satisfied because plaintiffs seek relief against at least one of the government bodies that can enforce Section 99 against them. *Martin*, 241 F.Supp.3d at 283.

### II.  Section 99 violates the First Amendment as applied to the secret recording of police officers performing their duties in public because this blanket prohibition is not narrowly tailored to a significant government interest.

Mr. Martin and Mr. Pérez challenge Section 99 as applied to the secret recording of police officers performing their duties in public. *Compare Martin*, 241 F. Supp.3d at 279 & n.1, *with Project Veritas*, 244 F. Supp. 3d at 259, 265-66 (facial challenge to Section 99). Although this is a pre-enforcement suit—and thus plaintiffs have carefully proved their standing, *see infra*

Part I—it is still an as-applied challenge to a particular application of Section 99 rather than a facial challenge to the entire statute.[3]

This Court has already held that the First Amendment protects the right to record secretly police officers performing their duties in public. *Martin*, 241 F. Supp. 3d at 286-87; *see also Glik,* 655 F.3d at 85 (articulating the right without regard to whether the recording device is in view of police officers).[4]  Because Section 99 prohibits precisely that conduct, plaintiffs are entitled to summary judgment unless Section 99 survives intermediate scrutiny. *Martin*, 241 F. Supp. 3d at 287; *Rideout v. Gardner*, 838 F.3d 65, 71-72 (1st Cir. 2016).  This test requires defendants to establish that, as applied to the secret recording of officers performing their duties in public, Section 99 (1) serves a significant governmental interest, (2) is narrowly tailored to that interest, and (3) leaves open ample alternative channels of communication.  *Rideout*, 838 F.3d at 71-72; *South Boston Allied War Veterans Council v. City of Boston*, 875 F. Supp. 891, 918-19 (D. Mass. 1995); *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 604 (7th Cir. 2012) ("At the very least, the State's Attorney will have to justify this application of the

---

[3] *See American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) (granting preliminary injunction in pre-enforcement challenge to statute prohibiting any non-consensual audio recording, as applied to individuals who recorded law enforcement officers engaged in their official duties in public places); *United States v. Grace*, 461 U.S. 171 (1983) (holding statute unconstitutional in pre-enforcement challenge to statute prohibiting the display of a banner in the Supreme Court Building or grounds, as applied to such displays in the public sidewalks around the Court).

[4] *See Fields v. City of Philadelphia,* 862 F.3d 353, 360 (3rd Cir. 2017) (same); *Turner v. Lieutenant Driver*, 848 F.2d 678, 688 (5th Cir. 2017) (same); *see also Bacon v. McKeithen,* No. 5:14-cv-37, 2014 WL 12479640, *4 (N.D. Fl. Aug. 28, 2014) (construing state wiretap statute to allow secret recording of police officers performing their duties in public because "any contrary construction would raise serious constitutional issues as to its validity as an unreasonable restriction on constitutionally protected speech"); *State of New Hampshire v. Alfredo Valentin*, Dckt No. 216-2015-CR-766, unpub op. at 5 (Superior Court Northern District New Hampshire, October 21, 2015) ("[T]he Court find that the First Amendment protect secretly filming police in public, for the same reasons that the First Amendment generally protects filming the police.").

eavesdropping statute under some form of intermediate scrutiny."). This Court has already held

that Section 99 fails intermediate scrutiny. *Martin*, 241 F. Supp. 3d at 287-88; *cf. Bacon*, 2014

WL 12479640, *4 (noting that a law prohibiting secret recording of police officers performing

their duties in public "would be unlikely to pass constitutional muster."). Now, the undisputed

facts confirm that defendants cannot carry their burden on any of the three intermediate scrutiny

elements.

### A. There is no significant government interest served by the challenged application of Section 99.

To establish a significant government interest, defendants must demonstrate *both* "'that

the recited harms are real, not merely conjectural," *and* that the challenged application of Section

99 "'will in fact alleviate those harms in a direct and material way.'" *Asociacion de Educacion*

*Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 18 (1st Cir. 2007), quoting *Turner*,

512 U.S. at 664. To the extent defendants have asserted government interests here,[5] they appear

to be: protecting police privacy, protecting police from assault and interference with their duties,

and protecting civilian privacy. SUMF ¶¶ 53-58, 60-61. None of those asserted interests rises to

the level of a significant interest that Section 99 serves "in a direct and material way."

For starters, Section 99 does not serve any significant government interest concerning the

police. As this Court has observed, "[t]he government does not have a significant interest in

protecting the privacy of law enforcement officials discharging their duties in a public place."

---

[5] When asked to describe each government interest served by the challenged application of Section 99, District Attorney Conley exclusively referred to two memorandums of law in support of his motions to dismiss in *Project Veritas Actions v. Conley*, and Commissioner Evans only "refer[ed] plaintiff to [Section 99], its legislative history and relevant judicial decisions." SUMF ¶¶ 53-54, 60-61. It is not at all clear that the government can exclusively rely on legal memos or a statute as facts to assert its interests; the analysis above assumes without conceding that it can.

*Martin*, 241 F.Supp.3d at 287 (citing *Glik*, 655 F.3d at 84). And even assuming a significant government interest in generally protecting police from assault and interference with their duties, that interest is in no way implicated by *secret* recording that cannot harm or interfere with the officers who are unaware that it is even happening.  Indeed, the defendants have not provided any data, studies, or surveys to demonstrate that secret recording affects police officers *at all*. SUMF ¶¶ 58-61; *see also* SUMF ¶¶ 62-63 (officer who charged an individual for secretly recording him during a traffic stop would not have behaved any differently if he had not been secretly recorded during the incident). "The government's burden is not met when a State offers no evidence or anecdotes in support of its restriction." *Rideout*, 838 F.3d at 73 (cleaned up).

This leaves the alleged government interest in protecting civilian privacy. Because plaintiffs' as-applied challenge is limited to recordings made when a police officers is present, plaintiffs' challenge implicates civilians only when they make oral communications directly to or at least near police officers performing their duties in public. But the First Circuit has already articulated that "the interest in protecting private communication" "is virtually irrelevant []" where the intercepted communications involve a search by police officers of a private citizen's home in front of that individual, his wife, other members of the family, and at least 8 law enforcement officers," *Jean v. Massachusetts State Police*, 492 F.3d 24, 30 (1st Cir. 2007). If anything, this conclusion has even more force when the interaction occurs in a public space.

What is more, the undisputed facts do not establish any government interest in treating as private the oral communications of civilians who speak to or near officers in public. To the contrary, the government routinely uses such communications *against* civilians. Thus, not surprisingly, the record contains no evidence that the defendants' enforcement of Section 99 is motivated by a desire to protect the communications of civilians who speak to or near police

12

officers in public. Instead, concerns regarding police officers, not civilians, appear to be driving

enforcement of Section 99. For example, the BPD's Wiretap Video, Wiretap Bulletin and

Wiretap Chapter all focus on examples of wiretap violations involving recordings of police

officers without providing a single example describing the application of Section 99 to the secret

recording of a civilian either during or near an interaction with a police officer. SUMF ¶¶ 100,

102, 111. This training translates into practice. Of the 9 applications for criminal complaints filed

by the BPD against individuals for secretly recording police officers performing their duties in

public over the past 7 years, not a single application or corresponding police report mentions any

concerns about civilian privacy or lists a civilian as the victim of the wiretap violation. SUMF ¶¶

50-51. Instead, reflecting the BPD's focus, every report that lists a victim of the wiretap violation

cites either the Commonwealth of Massachusetts or the police officer. SUMF ¶ 50.[6]

### B. The challenged application of Section 99 is not narrowly tailored.

Even if defendants could demonstrate a significant government interest at stake here, they

could not show that the challenged application of Section 99 is narrowly tailored to serve such an

interest. *Cf. Garcia-Padilla*, 490 F.3d at 18; *Rideout,* 838 F.3d at 74. This test "demand[s] a

close fit between ends and means," and requires the government to prove "that alternative

measures that burden substantially less speech would fail to achieve the government's interests."

*McCullen*, 134 S. Ct. at 2534, 2540; *see also Garcia-Padilla*, 490 F.3d at 16 (effect must be "no

greater than necessary" to protect the government's interest). Here, as this Court already held,

---

[6] In one instance, an individual charged with secretly recording a police officer performing his
duties in public was required to write an apology letter to the officer himself as a condition of
having the Section 99 violation dismissed. SUMF ¶ 52.

Section 99's prohibition against secretly recording police officers performing their duties in public "restricts a significant amount of nondisruptive and safe First Amendment activities[.]" *Martin*, 241 F. Supp. 3d at 288. This holding has been borne out through discovery, SUMF ¶¶ 10-16, 27-34, 46, 48-49, and the undisputed record now confirms that the challenged application of Section 99 "burdens substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 134 S. Ct. 2518, 2535 (2014) (cleaned up).

### (i)     Police Safety and Obstruction

Section 99 is not narrowly tailored to protect officer safety or guard against obstruction of police work. As noted above, by definition a secret recording does not physically harm or obstruct the person being recorded, and thus a prohibition against such recording cannot prevent any such harm or obstruction. But even if it could, Section 99 still would not be narrowly tailored because the Massachusetts criminal code independently protects police safety and their ability to perform their duties. A government restriction of speech cannot survive when other laws protect the government's interests without similarly restricting constitutionally protected behavior. *See, e.g.*, *McCullen*, 134 S. Ct. at 2538 (buffer zone surrounding abortion clinics not narrowly tailored where any concerns regarding obstruction "can readily be addressed through existing local ordinances"); *Rideout*, 838 F.3d at 74 (prohibition of ballot selfies not narrowly tailored where "the State has not demonstrated that other state and federal laws prohibiting voter corruption are not already adequate"). The Commonwealth separately prohibits assault and battery on police officers and the intimidation or harassment of police officers and witnesses with the intent of interfering with an investigation. *See* M.G.L. ch. 265 § 13D; M.G.L. ch. 268 § 13B. "Rather than imposing blanket liability" on secretly recording police officers performing their duties in public, the Commonwealth "can pursue existing civil and criminal sanctions"

14

against individuals who assault or intimidate police officers. *Courtemanche v. General Services Admin.*, 172 F. Supp. 2d 251, 273 (D. Mass. 2001). Because defendants have "not shown that [they] seriously undertook to address the problem with less intrusive tools readily available," they have "failed to observe the close fit between ends and means that narrow tailoring demands." *Cutting v. City of Portland, Maine*, 802 F.3d 79, 92 (1st Cir. 2015) (cleaned up).

### (ii)     Civilian Privacy

Contrary to the First Amendment's demand for a "close fit," there is no fit between any government interest in protecting *civilian* privacy and the application of Section 99 to prohibit secret recordings of *police officers*. This absence of narrow tailoring is apparent for at least two reasons.

*First*, Section 99's prohibition of *all* secret recordings of police officers performing their duties in public bans a broad range of interactions that have nothing do with even the theoretical prospect of protecting oral communications by civilians. These include: (1) one-on-one interactions with police officers in which the recorder is the only civilian present; (2) traffic stops and other interactions where there are multiple civilians present, but only the officer is unaware of the recording; and (3) situations where someone records a police officer's interaction with a civilian who does not or cannot speak.[7] These are exactly the kind of scenarios in which someone would want to secretly record police officers either for safety reasons or to document unvarnished police behavior. None of these scenarios present a risk of secretly recording a civilian's speech. Yet the challenged application of Section 99 proscribes all of them.

---

[7] Examples of the last can occur when an officer is assaulting an individual who is unwilling or unable to speak. *See, e.g.,* https://www.youtube.com/watch?v=dEe6IECjXh0&feature=youtu.be.

15

The record demonstrates that these scenarios are commonplace. For example, the BPD trains its officers with materials that describe applying Section 99 to a situation where a lone individual secretly records police officers during a traffic stop, SUMF ¶¶ 95, 102, 111. Similarly, both plaintiffs have wanted to secretly record police officers performing their duties in public in one-on-one interactions during traffic and pedestrian stops. SUMF ¶¶ 10, 12, 27, 29, 30. Defendants cannot demonstrate that the challenged application of Section 99 is "no greater than necessary" to protect civilian privacy given the wide-range of prohibited recordings that do not and cannot possibly implicate such concerns.

*Second*, even within the narrow band of scenarios where a civilian is secretly recorded while speaking within earshot of a police officer performing their duties in public, any potential government interest in protecting that civilian's privacy could at best be vindicated by prosecuting the secret recording of *the civilian*—not by prosecuting the secret recording of *the officer*. Although secret recordings of police officers and civilians might occur simultaneously, the government can still prosecute the recording of the civilian separately. Section 99's blanket prohibition against secretly recording officers is, therefore, insufficiently targeted to any concern about civilians. *See, e.g.*, *McCullen*, 124 S. Ct. at 2538-39 (buffer zone not narrowly tailored where "the Commonwealth has available to it a variety of approaches that appear capable of serving its interests" without burdening constitutionally protected speech); *Cutting,* 802 F.3d at 91-92 (city ordinance's "sweeping ban" against standing on city medians not narrowly tailored where "the City did not try—or adequately explain why it did not try—other, less speech restrictive means of addressing the safety concerns it identified").

**C.  The challenged application of Section 99 does not preserve adequate alternative methods of communication.**

Finally, Section 99 violates the First Amendment as applied to the secret recording of police officers performing their duties in public because it fails to preserve adequate alternative methods of communication. Audio recording is a "uniquely reliable and powerful method[] of preserving and disseminating news and information about events that occur in public," and this "self-authenticating character makes it highly unlikely that other methods could be considered reasonably adequate substitutes." *Alvarez*, 679 F.3d at 607. Here, the undisputed record shows that in certain situations Mr. Martin and Mr. Pérez are too afraid to openly record police officers performing their duties in public such that Section 99's prohibition of secret recording means that they cannot exercise their right to record at all. SUMF ¶¶ 10, 18-20, 27, 36-38. In such circumstances, Section 99 entirely eliminates a method of communication for which there is no adequate substitute. *See, e.g.*, *Bacon v. McKeithen*, 2014 WL 12479640 at *4 (noting a prohibition of the secret recording of police "would also fail to leave open other alternative channels of communication for the constitutionally protected right to videotape police officers").

**III.  The Boston Police Commissioner is liable under *Monell* due to the BPD's explicit policy of enforcing Section 99 against individuals who secretly record police officers performing their duties in public.**

Because Plaintiffs' claim against Commissioner Evans is brought in his official capacity, it amounts to a municipal liability claim. *Monell*, 436 U.S. at 690 n.55. Under 42 U.S.C. § 1983, a municipality is a proper defendant when a municipal policy—which generally implies a "deliberate" or "conscious" choice amongst various alternatives—causes a constitutional violation. *Monell*, 426 U.S. at 690-91; *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986).

17

This Court has already held that, where a municipality is not mandated to enforce a particular statute, the municipality's decision to educate and authorize its officers to do so under specific circumstances constitutes a "conscious choice" that triggers *Monell* liability. *Martin*, 241 F. Supp. 3d at 284-85 (citing *Vives*, 524 F.3d at 353).   The Court also determined that plaintiffs "adequately plead a *Monell* claim" because their factual allegations "suggest[ed] that the BPD has affirmatively and consciously chosen to educate officers about Section 99 and its particular application to the recording of officers' activities." *Martin*, 241 F.Supp.3d at 285. Plaintiffs are now entitled to summary judgment because the undisputed facts bear out those allegations.

### A.  The BPD's policy to arrest individuals who secretly record police officers performing their public duties is a municipal policy under *Monell*.

Nothing within Section 99 or any other Massachusetts law requires the BPD to enforce the statute against individuals who secretly record police officers performing their duties in public.[8]  What is more, like all municipalities, the BPD cannot, and does not, prioritize the enforcement of every state statute.  It neither trains recruits nor provides continuing education on the application of every crime under the Massachusetts General Laws. SUMF ¶¶ 76, 88.  Within this context, the BPD has exercised its "freedom to act" with respect to Section 99 and its various applications by making the conscious choice to explicitly train both veteran officers and new recruits to enforce the statute against individuals who secretly record police officers performing

---

[8] *Compare* M.G.L. ch. 272 § 99(C)(1) (prescribing punishments for violations of the statute, without instructing police departments to enforce each such violation), *with Vives*, 524 F.3d at 354 n.6 (statute requires enforcement when it states "a constable or police officer must . . . issue an appearance ticket" when a person violates the law), *and Snyder v. King*, 745 F.3d 242, 243-44 (7th Cir. 2014) (statute requires enforcement when it states "a county voter registration office shall remove from the official list of registered voters the name of a voter who is disfranchised under this chapter due to a criminal conviction").

their duties in public. *Vives*, 542 F.3d at 354, 356.  Specifically, the BPD instructs officers that

they have a "right of arrest" when there is probable cause to believe there has been a secret

recording, and then consistently educates its officers about Section 99's specific application to

the secret recording of police officers performing their duties in public. SUMF ¶¶ 93-95, 97, 102,

103, 106, 111-12.   The BPD's repeated choice to focus its resources on a focused application of

Section 99 is a municipal policy for which Commissioner Evans should be held liable in his

official capacity. *See Vives*, 524 F.3d at 356 (police department manual's examples of how an

individual can violate a statute constitutes evidence of a conscious choice).

For years, the Academy has devoted a portion of its limited resources towards providing

Section 99 training through every available method to recruits and veteran officers.  SUMF ¶ 89.

The Academy has created just 22 training bulletins over the past three years, and since 2009 it

has put out only 28 e-learning videos, which require "tons" of resources to produce. SUMF ¶ 71,

77-78.  It therefore represents a real prioritization that the Academy directed its instructors to

internally produce *both* an e-learning video on Section 99 (Wiretap Video) *and* a bulletin on

Section 99 entitled Training Bulletin 15-10 "Wiretap Statute: Interception of Wire and Oral

Communications M.G.L. ch. 272 sec 99" (Wiretap Bulletin). 173-74, 175. [9] The BPD directed

even more of its resources towards this training when it re-circulated the Wiretap Bulletin in both

Commissioners Memo 11-061 signed by Police Commissioner Edward Davis (CM 11-061),  and

Commissioners Memo 15-023 signed by Commissioner William Evans (CM 15-023). SUMF ¶¶

103, 106.  Both directed BPD commanders to read the Wiretap Bulletin aloud during rollcall,

---

[9] The Academy does not create a training document and an e-learning video for every topic, and
the Commissioner and legal advisor make the decision to do both at once. SUMF ¶ 79.

19

representing the only two Commissioner's Memorandum to include this requirement in at least

the last seven years. SUMF ¶ 109. CM 11-061 also mandated that all officers review the Wiretap

Bulletin and the Wiretap Video within 10 days, becoming the only Commissioner's

Memorandum in at least the last seven years to require officers to review a training bulletin or

take an e-learning course within 10 days. SUMF ¶ 104-05. Finally, Lt. John Flynn, who both

teaches criminal law to Academy recruits and authors the "primary text" for the course, includes

Section 99 amongst the limited number of crimes discussed in his book and taught in his class.

SUMF ¶ 85-88, 110-12.

Notably, the undisputed record demonstrates not only that the Academy repeatedly

chooses to devote its resources to Section 99 training, but that it consistently decides to do so in a

way that targets the statute's application to the secret recording of police officers performing

their duties in public. The Wiretap Video explicitly focuses on Section 99's application to the

recordings of police officers. It depicts two scenarios where an individual records a police officer

performing their duties in public—the first, openly, the second, in secret—and advises that an

officer could "take charges out against" the individual in the second scenario. SUMF ¶¶ 93-95. It

does not include any scenarios that apply Section 99 to a secret recording of a civilian. SUMF ¶

100. To the contrary, noting that the individual in the second scenario had his cellphone "in his

pocket, out of view of the police officer and [] wanted to capture the officer's voice without the

officer knowing it," the Wiretap Video instructs "that is exactly what the wiretap statute attempts

to prevent." SUMF ¶ 95.  The Wiretap Bulletin and Wiretap Chapter similarly focus on Section

99's application to police recordings. SUMF ¶¶ 102, 111. Instructing police officers they have a

"right of arrest" when there is probable cause to believe an individual has secretly recorded a

conversation, they each describe two cases where defendants were convicted for secretly

recording police officers performing their duties in public to the exclusion of any examples where an individual was convicted for secretly recording a civilian. SUMF ¶¶ 102, 111.

Through these materials, the Academy routinely chooses to direct BPD officers to focus on a particular application of Section 99: in just one example, the Wiretap Video remains available on the Academy's e-learning site, it is included in every BPD in-service training that discusses Section 99, and to this day "[e]ach recruit class" that Lt. Flynn teaches watches the video as part of their instruction. SUMF ¶¶ 98-99, 112. "In giving these examples," of what violates the statute, "the Police Department put flesh on the bones" of Section 99 and "instructed officers that they could make arrests for constitutionally protected conduct." *Vives*, 524 F.3d at 356. The undisputed record therefore demonstrates that the BPD has made a conscious choice to educate its officers to enforce Section 99 against individuals who secretly record police officers performing their duties in public, which is a policy that triggers *Monell*-liability.

### B. The BPD's policy has caused a cognizable injury.

The "conclusion that the actions taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Bd. of Cnty. Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 405 (1997); *Haley v. City of Boston*, 657 F.3d 39, 51-52 (1st Cir. 2011) (same). For this reason, "[r]esolution of the policy issue should also resolve the issue of causation." *Vives*, 524 F.3d at 357. Such is the case here. The BPD teaches its officers about its policy to enforce Section 99 against individuals who secretly record police officers performing their duties in public. *See supra.* As a result, BPD officers know that individuals cannot secretly record police officers performing their duties in public under Section 99 and charge individuals accordingly. SUMF ¶ 95. Indeed, BPD officers have filed at least 9 applications for criminal

21

complaints against individuals for this behavior in the past 7 years. SUMF ¶ 49.  This record

establishes that the BPD's policy is the "moving force of the constitutional violation." *Garner v.*

*Memphis Police Dept.*, 8 F.3d 358, 364-65 (6th Cir. 1993) (causation where department taught

police officer about its deadly force policy).

## REQUEST FOR ORAL ARGUMENT

Plaintiffs request oral argument on this motion under Local Rule 7.1(d).

## CONCLUSION

For the reasons above, this Court should grant plaintiffs' motion for summary judgment.

Dated:  June 11, 2018                     Respectfully submitted,

                                          */s/ Jessie J. Rossman*
                                          Jessie J. Rossman (BBO No. 670685)
                                          Matthew R. Segal (BBO No. 654489)
                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION OF MASSACHUSETTS
                                          211 Congress Street
                                          Boston, MA 02110
                                          (617) 482-3170
                                          jrossman@aclum.org

                                          – and –

                                          William D. Dalsen (BBO No. 689334)
                                          PROSKAUER ROSE LLP
                                          One International Place
                                          Boston, MA  02110-2600
                                          Telephone: (617) 526-9600
                                          Facsimile: (617) 526-9899
                                          wdalsen@proskauer.com

                                          *Attorneys for Plaintiff K. Eric Martin and René
                                          Pérez*


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed via the Court's CM/ECF system and that and a copy will be sent automatically to all counsel of record on June 11, 2018.

                                          */s/ Jessie J. Rossman*
                                          Jessie J. Rossman (BBO No. 670685)