IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| K. ERIC MARTIN and RENÉ PÉREZ,<br><br>    *Plaintiffs*,<br>v.<br><br>WILLIAM EVANS, in his Official Capacity as Police Commissioner for the City of Boston, and DANIEL F. CONLEY, in his Official Capacity as District Attorney for Suffolk County,<br><br>    *Defendants*. | Civil Action No. 1:16-cv-11362-PBS |

**PLAINTIFFS' RESPONSE TO DEFENDANT COMMISSIONER EVANS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiffs K. Eric Martin and René Pérez respectfully submit the following responses to Defendant Commissioner Evans' Statement of Material Facts in Support of His Motion for Summary Judgment (the "Statement"). As set forth herein, Plaintiffs have not disputed certain facts Defendant Commissioner Evans has asserted for purposes of summary judgment only. Plaintiffs may, however, dispute such facts at a later time or for other purposes, and reserve their right to do so. Plaintiffs respond to the corresponding numbered paragraphs of Defendant Commissioner Evans' Statement as follows:

    1.    ***Defendant's Statement*:** Plaintiff K. Eric Martin ("Plaintiff Martin") has never been arrested by the Boston Police Department for violating Mass. Gen. Laws c. 272, § 99 ("Wiretap Statute"). *ECF No. 118-1, at 238:8-19*.

    ***Plaintiffs' Response*:** **Undisputed**.

2. ***Defendant's Statement***; Plaintiff Martin does not know anyone who has been arrested by the Boston Police Department pursuant to the Wiretap Statute. *ECF No. 118-1, at 238:8-19.*

***Plaintiffs' Response*: Undisputed**.

3. ***Defendant's Statement*:** Plaintiff Martin is not sure of the specific last time that he trained others to record the police. *ECF No. 118-1, at 223:15-17.*

***Plaintiffs' Response*: Undisputed**.

4. ***Defendant's Statement:*** Plaintiff Martin is not currently scheduled to train others to record the police and does not have a specific time or date to do so. *ECF No. 118-1, at 223:18-224:7.*

***Plaintiffs' Response*: Undisputed**,

5. ***Defendant's Statement:*** Plaintiff Martin does not have any present intention as things stand to secretly record Boston Police Officers. *ECF No. 118-1, at 282:15-21.*

***Plaintiffs' Response*: Undisputed** with the clarification that "as things stand" refers to the fact that it is currently illegal under the Wiretap Statute to secretly record police officers. The cited materials makes that clear. When Defendant Evans asked, "[d]o you have any present intention as things stand to secretly record Boston Police officers," Mr. Martin responded "[n]ot as they stand with the current wiretap statute." ECF No. 118-1 [Martin Depo. Tr.] 282:15-21. This meaning is further reflected in an earlier exchange when Defendant Conley asked, "[d]o you have any present intention to secretly record a police officer in public," and Mr. Martin responded, "[n]ot presently while it is illegal to do so." ECF No. 111-1 [Martin Depo. Tr.] 201:24:-202:7.

6. ***Defendant's Statement*:** Plaintiff Rene Pérez ("Plaintiff Pérez") has never been arrested by the Boston Police Department for violating the Wiretap Statute. *ECF No. 118-2, at 209:4-7, 221:17-20.*

*Plaintiffs' Response***: Undisputed**.

7. ***Defendant's Statement*:** Plaintiff Pérez does not know anyone who has been arrested by the Boston Police Department pursuant to the Wiretap Statute. *ECF No. 118-2, at 209:4-7.*

*Plaintiffs' Response***: Undisputed**.

8. ***Defendant's Statement*:** Plaintiff Pérez has never made any plans to secretly record Boston Police Officers or any police officers in Massachusetts, and he has never taken any steps to do so. *ECF No. 118-2, at 222:19-223:4.*

*Plaintiffs' Response***:** First clause **undisputed** insofar as Mr. Pérez has not made plans to secretly record police officers in Massachusetts while it is illegal to do so. Second clause **disputed** as Plaintiff Pérez testified he filed this lawsuit specifically "to be able to secretly record the police in public on duty." ECF No. 118-2 [Perez Depo. Tr.] 222:8-15. As Mr. Pérez explained "I want to secretly record police officers performing their duties in public, but I have not done so because I am afraid of getting arrested or prosecuted under the Wiretap Statute and I will not do so until the Court affirms that it is legal and stops the District Attorney and the Police Commissioner from enforcing the Wiretap Statute against this behavior. As a result, I have filed this lawsuit in furtherance of being able to secretly record police officers performing their duties in public." ECF No. 111-14 [Perez Suppl. Interrog. Resp. No. 10] 9. Further, Mr. Pérez has taken the following additional steps that would enable him to secretly record police officers performing their duties in public if he could do so without risk of prosecution: he bought a

phone with capability to audio and video record, he has his phone on him at all times when he goes out in public, he placed the shortcut for his phone's recording function on his homepage to make it easier to access and begin recording; and he carries an external battery to recharge his recording device because recording can use up the phone's battery. *Id.* at 8-9.

9. ***Defendant's Statement:*** Plaintiff Pérez has no present intention as things stand to secretly record Boston Police Officers or police officers in Massachusetts. *ECF NO. 118-2, at 223:5-10*.

***Plaintiffs' Response*: Undisputed** with the clarification that "as things stand" refers to the fact that it is currently illegal under the Wiretap Statute to secretly record police officers. Mr. Pérez testified that he "would plan to secretly record the police in instances of it being legal to do so." Rossman Suppl. Decl. Ex. 1 [Perez Depo. Tr.] 165:3-4. But as Mr. Pérez explained "I want to secretly record police officers performing their duties in public, but I have not done so because I am afraid of getting arrested or prosecuted under the Wiretap Statute and I will not do so until the Court affirms that it is legal and stops the District Attorney and the Police Commissioner from enforcing the Wiretap Statute against this behavior." ECF No. 111-14 [Perez Suppl. Interrog. Resp. No. 10] 9.

10. ***Defendant's Statement:*** Plaintiff Pérez does not have any concrete plans with regard to resuming his efforts to teach others about recording police officers. *ECF No. 118-2, at 223:5-224:14*.

***Plaintiffs' Response*: Undisputed**.

11. ***Defendant's Statement:*** The Boston Police Academy is a division of the Boston Police Department that trains Boston Police Officers. *ECF No. 118-3, at 9:3-10:4, 11:8-22, 30:23-31:24; ECF No. 118-4, at 26:22-29:11*.

4

*Plaintiffs' Response*: **Undisputed**.

12.     *Defendant's Statement:* The Boston Police Academy is overseen and operates under the aegis of the Municipal Police Training Committee ("MPTC"), which is a state agency. *ECF No. 118-4, at 41:2-7, 43:6-24, 23:11-24:6, 48:6-18; ECF No.118:3, at 30:23-31:24*.

*Plaintiffs' Response*: **Disputed**.

First, **disputed** per Local Rule 56.1 and Fed. R. Civ. P. 56(c)(1) that the Boston Police Academy "is overseen and operates under the aegis of" the MPTC. Commissioner Evans' 30(b)(6) witness, Superintendent Lisa Holmes, who oversees the Boston Police Academy, did testify that "run[s]" the Academy under the MPTC's "auspices." ECF No. 118-4 [Holmes Depo. Tr.] 43:8-19. However, that statement, and the assertion the Academy operates "under the aegis" of the MPTC, is vague, ambiguous, and not delineated by the other cited testimony.

Otherwise **disputed.** Commissioner Evans' 30(b)(6) witness, Superintendent Lisa Holmes, who oversees the Boston Police Academy testified that although she "run[s]" the Academy under the MPTC's auspices, they "also have leeway." ECF No. 118-4 [Holmes Depo. Tr.] 43:8-19. That is because the Academy is independent and is not taught by MPTC instructors. ECF No. 124-13 [Holmes Depo. Tr.] 43:25-44:4. Indeed, the MPTC runs its own academy for other officers. Id. 43:9-11. Another 30(b)(6) witness for Commissioner Evans, Lt. John Flynn, similarly testified that the MPTC runs its own academies and that the BPD is an independent academy. ECF No. 124-14 [Flynn Depo. Tr.] 35:10-18.

13.     *Defendant's Statement:* The MPTC sets minimum training standards for police academies in Massachusetts. *ECF No.118-4, at 41:2-7, 43:6-24, 23:11-24:6*.

*Plaintiffs' Response*: **Undisputed** with the clarification that the Boston Police Academy can and does go above the MPTC standards, and can and does provide additional courses and

5

information beyond the MPTC standards. ECF No. 124-13 [Holmes Depo. Tr.] 41:2-7, 42:4-13, 43:20-24, 44:5-11; ECF No. 124-14 [Flynn Depo. Tr.] 35:19-21.

14. ***Defendant's Statement:*** The Boston Police Department and Boston Police Academy provide additional training above and beyond the MPTC standards. *ECF No. 118-4, at 41:2-7, 43:6-24; ECF No. 118-3, at 48:14-50:24.*

***Plaintiffs' Response*: Undisputed.**

15. ***Defendant's Statement:*** The Boston Police Department's training topics are typically identified in one of the following ways: (a) in response to court decisions and changes to the law, (b) in response to specific incidents that illustrate or occasion a need for further information to be disseminated to officers, or (c) in keeping with broader national developments in the law enforcement profession. *ECF No. 118-5.*

***Plaintiffs' Response*: Undisputed** that these are some of the ways in which the Boston Police Department identifies training topics, with the clarification that there are other ways as well. Commissioner Evans 30(b)(6) witness Captain Richard Sexton testified that the Department identifies topics that they think are "relevant and important". Rossman Supp. Decl. Ex. 2 [Sexton Depo. Tr.] 51:15-17. Lt. John Flynn, another 30(b)(6) witness for the Commissioner, testified that the Department selects topics for E-Learning in a "variety of ways." ECF No. 124-14 [Flynn Depo. Tr.] 66:6-7. The topics could "come from the commissioner's office. They might come from somebody on our team. Somebody from the police academy. Some law that there is a change. The commissioner's memo. Anything along those lines." Id. 66:9-13. He similarly testified that there were "various ways" that the BPD selects topics for training bulletins, "whether it comes from headquarters or the commissioner's office. It may

6

come from a change in the law. It may just come from – there are different things go [sic] on in society that we should be addressing." Rossman Decl. Ex. 3 [Flynn Depo. Tr.] 74:14-20.

16. ***Defendant's Statement:*** The Boston Police Department identifies training topics in response to court decisions and changes to the law. *ECF No. 118-3, ECF No. 118-3, at 36:5-37:20; ECF No. 118-4, at 58:25-59:11; ECF No. 118-6, at 31:13-32:3; ECF No. 118-7, at 45:20-46:2, 64:23-65:7, 94:5-13, 109:9-12, 135:15-20; ECF No. 118-8*.

***Plaintiffs' Response*:** **Undisputed** that one way the Boston Police Department may identify training topics is in response to court decisions and changes to the law, with the clarification that there are other ways as well. Commissioner Evans 30(b)(6) witness Captain Richard Sexton testified that the Department identifies topics that they think are "relevant and important". Rossman Supp. Decl. Ex. 2 [Sexton Depo. Tr.] 51:15-17. Lt. John Flynn, another 30(b)(6) witness for the Commissioner, testified that the Department selects topics for E-Learning in a "variety of ways." ECF No. 124-14 [Flynn Depo. Tr.] 66:6-7. The topics could "come from the commissioner's office. They might come from somebody on our team. Somebody from the police academy. Some law that there is a change. The commissioner's memo. Anything along those lines." Id. 66:9-13. He similarly testified that there were "various ways" that the Department selects topics for training bulletins, "whether it comes from headquarters or the commissioner's office. It may come from a change in the law. It may just come from – there are different things go [sic] on in society that we should be addressing." Rossman Decl. Ex. 3 [Flynn Depo. Tr.] 74:14-20.

17. ***Defendant's Statement:*** The purpose of the Boston Police Academy is to train officers to enforce the laws appropriately. *ECF No. 118-7, at 31:13-16*.

*Plaintiffs' Response*: **Disputed**. The Commissioner's 30(b)(6) witness, Superintendent Holmes testified the purpose of the Boston Police Academy "is to train people to be police officers and to keep our current police force updated and current with whatever training is required by them or national trends, police standards." ECF No. 124-13 [Holmes Depo. Tr.]40:9-14. Another 30(b)(6) witness, Captain Richard Sexton, testified the purpose of the Boston Police Academy is to train individuals "to become a police officer" and to "carry out police powers," and otherwise "just ongoing training" ECF No. 118-3 [Sexton Depo. Tr.]31:2-24. Further, the phrase "to enforce the laws appropriately" improperly characterizes the evidence and cannot constitute a material fact.

18. ***Defendant's Statement:*** On November 18, 2010, the Boston Police Department issued Training Bulletin 15-10 (the "Training Bulletin"). *ECF No. 118-8; ECF No. 118-4, at 87:14-88:10.*

*Plaintiffs' Response*: **Undisputed.**

19. ***Defendant's Statement:*** The Training Bulletin describes certain definitions related to the Wiretap Statute and the elements of a violation. *ECF No. 118-8*.

*Plaintiffs' Response*: **Undisputed** with the clarification that the Training Bulletin also includes a description of two cases, *Commonwealth v. Hyde*, 434 Mass. 594, and *Commonwealth v. Manzelli*, 68 Mass. App. Ct. 691, where defendants were convicted for secretly recording police officers performing their duties in public. ECF No. 118-8.

20. ***Defendant's Statement:*** In the Training Bulletin, under the provided definition of the term "Interception," the word "secretly" is emphasized in bold font. *ECF No. 118-8.*

*Plaintiffs' Response*: **Undisputed**.

21. ***Defendant's Statement:*** In the Training Bulletin, the following statements are emphasized in bold font: "Public and open recordings are allowed under the Wiretap statute. There is no right of arrest for public and open recordings under this statute." *ECF No. 118-8.*

***Plaintiffs' Response*: Undisputed**.

22. ***Defendant's Statement:*** The Training Bulletin was created as a result of the incident alleged in Glik v. Cunniffe, No. 1:10-cv-10150-WGY (D. Mass.) and the resulting federal lawsuit against the City of Boston and certain Boston Police Officers. *ECF No. 118-4, at 87:14-89:3; ECF No. 118-6, at 39:13-40:11*.

***Plaintiffs' Response* : Objection under Fed. R. Civ. P. 56(c)(2)** as these statements are not supported by admissible evidence. Superintendent Holmes and Officer Lanteigne lacked personal knowledge to testify as to the reasons the Training Bulletin issued under Fed. R. Evid. 602. Superintendent Holmes was not identified as a 30(b)(6) witness on this topic, and thus testified in her personal capacity on this topic. Rossman Supp. Decl. Ex. 4 [Holmes Depo. Tr.] 11:15- 12:25 and Holmes Depo Ex. 2. Superintendent Holmes testified that she was not involved in the creation of the Training Bulletin, Rossman Supp. Decl. Ex. 4 [Holmes Depo. Tr.] 92:13-15, that she did not work at the Academy at the time the Training Bulletin was created, *id.* 93:15-16, and that she did not talk to Lt. Chapman, Sgt. Flynn, or anyone else who was involved in the creation of the Training Bulletin about this Training Bulletin, either at the time it was issued or to prepare for the deposition, *id.* 17:9-24, 93:14-94:2. Instead, she was able to identify only "Department chatter" with unidentified individuals as the basis for her statement that the Training bulletin was issued because of that incident. *Id.* 93:7-10. Because this does not constitute personal knowledge about the reasons the Training Bulletin issued, her testimony is inadmissible, and should be rejected under Fed. R. Civ. P. 56(c)(2). Officer Lanteigne, who

testified in his individual capacity alone, testified that the "basis" for his knowledge was "I recall that being a pretty important case that was in the newspapers. And when that initial training bulletin had come out, I do recall it having something to do with that – or having specifically to do with that." ECF No. 118-6 [Lanteigne Depo. Tr.] 41:7-13. Without any elaboration for the basis for this statement, Officer Lanteigne's testimony is inadmissible because he lacked personal knowledge to testify as to the reasons why the Training Bulletin was circulated, and should be rejected under Fed. R.Civ. P. 56(c)(2).

Additionally**, disputed** per Local Rule 56.1 and Fed. R. Civ. P. 56(c)(1) as Officer Lanteigne's cited testimony does not support the statement that the Training Bulletin was created because of *Glik.* Officer Lanteigne was asked why the Training Bulletin was "being circulated," *not* why it was created. ECF No. 118-6 [Lanteigne Depo. Tr.] 40:4-5; 39:15-16 ("Do you have any understanding as to why that training bulletin was distributed?").

23. ***Defendant's Statement*:** The Training Bulletin was re-issued on October 19, 2011 by the Boston Police Department. *ECF No. 118-9; ECF No. 118-4, at 89:8-90:11, ECF No. 118-10; ECF No. 118-6, at 40:15-41:13*.

*Plaintiffs' Response*: **Undisputed.**

24. ***Defendant's Statement*:** The Commissioner's Memorandum that re-issued the Training Bulletin explicitly references the First Circuit's holding in Glik. *ECF No. 118-9; ECF No. 118-4, at 89:8-90:11; ECF No. 118-10; ECF No. 118:6, at 40:15-41:13*.

*Plaintiffs' Response*: **Undisputed.**

25. ***Defendant's Statement***: The decision of the First Circuit in Glik was the reason for the re-issuance of the Training Bulletin on October 19, 2011. *ECF No. 118-4, at 87:14-89:3; ECF No. 118-6, at 39:13-40:11*.

***Plaintiffs' Response***:  **Objection under Fed. R. Civ. P. 56(c)(2)** as these statements are not supported by admissible evidence. Superintendent Holmes and Officer Lanteigne lacked personal knowledge to testify as to the reasons the Training Bulletin re-issued on October 19, 2011 under Fed. R. Evid. 602. Superintendent Holmes was not identified as a 30(b)(6) witness on this topic, and thus testified in her personal capacity on this topic. Rossman Supp. Decl. Ex. 4 [Holmes Depo. Tr.] 11:15- 12:25 and Holmes Depo Ex. 2. Superintendent Holmes testified that she was not involved in the creation of the 2011 Commissioner's Memo that re-issued the Training Bulletin, that she did not speak to the Police Commissioner or anyone in the Commissioner's Office about the 2011 Commissioner's Memo that re-issued the Training Bulletin, and that her statement that *Glik* was the reason for the 2011 re-issuance of the Training Bulletin was "based solely on the face" of the 2011 Commissioner's Memo. Rossman Supp. Decl. Ex. 4 [Holmes Depo. Tr.] 94:11-95:3. Because Superintendent Holmes had no independent basis beyond reading a sentence verbatim to testify as to the reasons for the 2011 re-issuance of the Training Bulletin, her testimony is inadmissible, and should be rejected under Fed. R. Civ. P. 56(c)(2). Lanteigne, who testified in his individual capacity alone, testified that the "basis" for his knowledge was "I recall that being a pretty important case that was in the newspapers. And when that initial training bulletin had come out, I do recall it having something to do with that – or having specifically to do with that." ECF No. 118-6 [Lanteigne Depo. Tr.] 41:7-13. Without any elaboration for the basis for this statement, Lanteigne's testimony is inadmissible because he lacked personal knowledge to testify as to the reasons why the Training Bulletin was circulated, and should be rejected under Fed. R.Civ. P. 56(c)(2).

26. ***Defendant's Statement:*** On May 4, 2015, the Training Bulletin was again re-issued by the Boston Police Department by way of a Commissioner's Memorandum. *ECF No. 118-4, at 79:19-81:11; ECF No. 118-11.*

***Plaintiffs' Response*: Undisputed.**

27. ***Defendant's Statement:*** The Commissioner's Memorandum re-issuing the Training Bulletin on May 4, 2015 explicitly stated that it was "to remind all officers that civilians have a First Amendment right to publicly and openly record officers while in the course of their duties." *ECF No. 118-4, at 79:19-81:11; ECF No. 118-11.*

***Plaintiffs' Response*: Undisputed** that the face of the Commissioner's Memorandum said "I would like to take this opportunity to remind all officers that that civilians have a First Amendment right to publicly and openly record officers while in the course of their duties." ECF No. 118-11 [Commissioner's Memo 15-023].

28. ***Defendant's Statement:*** In training its officers, the Boston Police Department also uses Legal Update manuals from the MPTC. For the past few years, the Boston Police Department has used these manuals to provide in-service or e-learning training to Boston Police Officers. *ECF No.118-7, at 111:2-112:13.*

***Plaintiffs' Response*: Undisputed** the Boston Police Department has "given out" MPTC Legal Update documents as part of in-service training for the past 3-4 years, ECF No. 118-7 [Flynn Depo. Tr.] 111:12-19, with the clarification that a "variety" of materials in addition to MPTC materials can be used for in-service training, including "Commissioner's memo, a new rule that may come out. Many, many different things." Rossman Decl. Ex. 3 [Flynn Depo. Tr.] 102:13-15*; see also id.* 209:17-22 ("Q: Is it your understanding that anytime the Boston Police

Department had an in-service training that discussed the wiretap statue, that it would also include the wiretap statute video? MR. MCGARRY: Objection. A: Yes.").

29. ***Defendant's Statement:*** Two of the MPTC Legal Update manuals used by the Boston Police Department discuss the Wiretap Statute. *ECF No. 118-12; ECF No. 118-13*.

***Plaintiffs' Response*: Undisputed**.

30. ***Defendant's Statement:*** The tables of contents for these two MPTC Legal Update manuals show that they discuss legal updates not only as to the Wiretap Statute but also as to other legal issues. *ECF No. 118-12; ECF No. 118-13*.

***Plaintiffs' Response*: Undisputed**.

31. ***Defendant's Statement:*** There have been years when the Boston Police Department has used MPTC Legal Update manuals that did not discuss the Wiretap Statute at all. *ECF No. 118-7, at 120:20-121:22; ECF No. 118-14*.

***Plaintiffs' Response*: Undisputed**.

32. ***Defendant's Statement:*** The Boston Police Academy trains recruits using a criminal law book written by the Boston Police Academy's own Lt. John Flynn (the "Flynn Book"). *ECF No. 118-7, at 44:6-16; ECF No. 118-15*.

***Plaintiffs' Response*: Undisputed** with the clarification that the Flynn book is the primary text used to teach recruits criminal law at the Boston Police Academy. ECF No. 118-7 [Flynn Depo Tr.] 46:6-8.

33. ***Defendant's Statement:*** The Boston Police Academy trains recruits using a criminal law book authored by Lt. Justin M. Hanrahan (the "Hanrahan Manual"). The Hanrahan Manual is used only as a reference. The Hanrahan book is used not only at the Boston Police Academy but throughout the state. *ECF No. 118-7, at 52:16-53:12; ECF No. 118-16*.

*Plaintiffs' Response*: **Undisputed** .

34. ***Defendant's Statement:*** In teaching criminal law at the Boston Police Academy, Lt. John Flynn uses as his own reference a book by Jonathan Scheft (the "Scheft Manual"), though recruits are not required to use this book. The Scheft Manual is used not only by Lt. John Flynn (for his own reference) but throughout the state. *ECF No. 118-7, at 51:5-52:10; ECF No. 118-17.*

*Plaintiffs' Response*: **Undisputed**.

35. ***Defendant's Statement:*** The Flynn Book contains a section discussing the Wiretap Statute and also contains over 150 other sections discussing different criminal law topics. *ECF No. 118-7, at 51:5-52:10; ECF No. 118-15.*

*Plaintiffs' Response*: **Undisputed**.

36. ***Defendant's Statement:*** The Hanrahan Manual contains a section discussing the Wiretap Statute and also contains over 200 other sections discussing different criminal law topics. *ECF No. 118-7, at 52:18-53:12; ECF No. 118-16.*

*Plaintiffs' Response*: **Undisputed**.

37. ***Defendant's Statement:*** The Scheft Manual contains a section discussing the Wiretap Statute and also contains over 150 other sections discussing different criminal law topics. *ECF No. 118-7, at 51:5-52:10; ECF No. 118-17.*

*Plaintiffs' Response*: **Undisputed**.

38. ***Defendant's Statement:*** Collectively, the criminal offenses described in the Flynn Book, the Hanrahan Manual, and the Scheft Manual range in seriousness from defrauding a common victualler to murder. *ECF No. 118-16, at COB0180; ECF No. 118-15, at COB0139.*

*Plaintiffs' Response*: **Undisputed**.

39. ***Defendant's Statement:*** The Boston Police Academy also creates and makes e-learning materials available to its officers for training. E-learning materials are video and computer-based training materials. *ECF No. 118-7, at 16:4-15, 18:22-19:16; ECF No. 118-3, at 33:21-34:7*.

***Plaintiffs' Response*: Undisputed.**

40. ***Defendant's Statement*:** The Boston Police Department created and maintains an e-learning video regarding the Wiretap Statute which was mandatory for Boston Police Officers to review. *ECF No. 118-7, at 86:14-91:12, 145:6-22; ECF No. 118-18*.

***Plaintiffs' Response*: Undisputed.**

41. ***Defendant's Statement:*** Apart from the e-learning video regarding the Wiretap Statute, the Boston Police Department also maintains over 25 other video or computer-based e-learning trainings on other topics, many of which were also mandatory. *ECF No. 118-7, at 86:14-91:12; ECF No. 118-18*.

***Plaintiffs' Response*: Undisputed** that the Boston Police Department maintains 27 other video or computer-based e-learning trainings on other topics in addition to the e-learning video regarding the Wiretap Statute. ECF No. 118-18.

42. ***Defendant's Statement:*** Asked if there were any circumstances in which he would not secretly record officers in public in the course of their duties, Plaintiff Pérez answered "Possibly, but I couldn't think of any right now." *ECF No. 118-2, at 226:4-10*.

***Plaintiffs' Response*: Undisputed** with the clarifications that Mr. Pérez would only secretly record police officers in public once "the Court affirms that it is legal," ECF No. 111-14 [Pérez Suppl. Interrog. Resp. No. 10] at 9*,* and that he identified numerous specific situations in

15

which he has wanted to secretly record police officers performing their duties in public in the past. ECF No. 124-2 [Perez Interrogatory Responses] at 11-15.

43.   *Defendant's Statement:* Plaintiff Martin testified that there any number of different scenarios in which he may wish to record police officers. *ECF No. 118-1, at 198:15-20.*

*Plaintiffs' Response*:   **Undisputed** with the clarification that Mr. Martin has identified numerous specific situations in which he has wanted to secretly record police officers performing their duties in public in the past. ECF No. 124-1 [Martin Supp. Interrogatory Resp.] at 13-17.

Dated: July 11, 2018

Respectfully submitted,

*/s/ Jessie J. Rossman*
Jessie J. Rossman (BBO No. 670685)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS
211 Congress Street
Boston, MA 02110
(617) 482-3170
jrossman@aclum.org

– and –

William D. Dalsen (BBO No. 689334)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
wdalsen@proskauer.com

*Attorneys for Plaintiff K. Eric Martin and René Pérez*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was filed via the Court's CM/ECF system and that and a copy will be sent automatically to all counsel of record on July 11, 2018.

                                                */s/ Jessie J. Rossman*
                                                Jessie J. Rossman (BBO No. 670685)