IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| K. ERIC MARTIN and RENÉ PÉREZ,<br><br>  *Plaintiffs*,<br>v.<br><br>WILLIAM EVANS, in his Official Capacity as Police Commissioner for the City of Boston, and DANIEL F. CONLEY, in his Official Capacity as District Attorney for Suffolk County,<br><br>  *Defendants*. | Civil Action No. 1:16-cv-11362-PBS |

**PLAINTIFFS' REPLY TO DEFENDANT CONLEY'S RESPONSES TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, AND RESPONSE TO DEFENDANT CONLEY'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiffs K. Eric Martin and René Pérez respectfully submit (1) the following reply to the responses of Defendant Conley to Plaintiffs' Statement of Material Facts in Support of Their Motion for Summary Judgment (ECF No. 123), and (2) the following responses to Defendant Conley's Statement of Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 137), as follows:

**PLAINTIFFS' REPLY TO CONLEY'S RESPONSE**

Defendant Conley did not supply a response to Plaintiffs' statement of undisputed material facts (ECF No. 123). As such, Defendant Conley has not "controverted" those facts "by the statement required to be served by opposing parties," and Plaintiffs' facts are "deemed for purposes of the motion to be admitted" by Defendant Conley. Local Rule 56.1 ("Material facts

of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

**PLAINTIFFS' RESPONSE TO CONLEY'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1. ***Defendant's Statement:*** D.A. Conley incorporates his Statement of Material Facts in Support of His Motions to Dismiss and for Summary Judgment, and all affidavits, depositions, and other documentation referenced therein. *ECF #112; ECF #111-1 through 111-20.*

***Plaintiffs' Response:*** Plaintiffs incorporate their responses to Defendant Conley's statement of facts (ECF No. 141).

2. ***Defendant's Statement:*** On the occasion described in paragraph 52 of the Plaintiffs' Statement of Undisputed Material Facts (#123), there was an agreement that the individual charged with violating G.L. c. 272, § 99, would, as a condition of the dismissal of that charge, write a letter of apology to the police officer whom he illegally recorded. *Tab 1 (Miller Depo.) at 65:4-66:19, 67:5-68:18; #124-7 (Miller Exh. 6) (excerpt) at 29-30 / SDAO 714-15.*

***Plaintiffs' Response:*** **Undisputed** with the clarification that Ms. Miller testified that the document "indicate[d]" to her that there was an agreement. ECF No. 137-1 at 66:7-19.

3. ***Defendant's Statement:*** Where, as in the occasion described in paragraph 52 of the Plaintiffs' Statement of Undisputed Material Facts, dismissal of a criminal charge is conditioned upon action by the criminal defendant, such a condition might be imposed by the adjudicating court either on its own or at the request of the prosecution. *Tab 1 (Miller Depo.) at 39:7-10, 49:7-50:14.*

*Plaintiffs' Response:* **Undisputed** that Ms. Miller testified that she could not say whether a prosecutor or a judge required action on the part of a criminal defendant in another case, with the clarification that she did not testify about whether she could determine who imposed the condition described in paragraph 52 of the Plaintiffs' Statement of Undisputed Material Facts. ECF No. 137-1 at 50:4-13, 65:4-66:19, 67:4-68:18.

4. The Suffolk District Attorney's Office designated Christina Miller, its Chief of District Courts and Community Prosecutions, to provide testimony pursuant to Fed. R. Civ. P. 30(b)(6) on the topic of "[a]ny harms caused by individuals secretly recording police officers performing their duties in public. *Tab 2 (Miller Exh. 1) at 5.*

*Plaintiffs' Response:* **Undisputed**.

5. Ms. Miller testified that such surreptitious recordings can "harm . . . a person's right to privacy" and potentially interfere with the officers, but that the assessment of any harms will necessarily vary based on the specific circumstances of the surreptitious recording. *Tab 1 (Miller Depo.) at 116:20-132:11.*

*Plaintiffs' Response:* **Disputed.** Defendant Conley's Rule 30(b)(6) designee, Ms. Miller, testified she could not identify facts to show enforcing § 99 against individuals who record police officers performing their duties in public protect privacy or protect public safety. ECF No. 137-1 at 122:20-123:14 ("Q. I think my question is actually a little bit different. Aside from thinking generally, are there any facts that actually exist in the world, that the District Attorney's Office is aware of, that show that enforcing the Wiretap Statute against individuals who record police officers performing their duties in public helps protect privacy? A. <u>I don't think I can answer that question</u>. Q. Similarly, is the District Attorney's Office aware of any facts that would show that enforcing the Wiretap Statute against individuals who record police officers

3

performing their duties in public would help protect safety? A. I mean, I would have to -- it would be speculative. Again, I would have to look at each case, each set of facts to make that determination. It would be speculative of me to potentially ponder those that would or would not.") (emphasis added); ECF No. 137-1 at 125:14-21 ("The first question concerning protecting privacy, when I stated that I can't answer that, I wanted to clarify that the reason I couldn't answer that was because it was speculative and a case-by-case analysis would need to be engaged in in order to answer that question.") (emphasis added).

Further, Ms. Miller testified the District Attorney's office could not speak to any general harms arising from enforcing § 99 against individuals who secretly recorded police officers performing their duties in public. ECF No. 137-1 at 116:20-118:3 ("Q. Are there any harms caused by individuals who secretly record police officers performing their duties in public? [Objection omitted] A. I suppose it means -- what do you mean by "harms"? BY MR. DALSEN: Q. In the view of the District Attorney's Office, are there harms caused by individuals who secretly record police officers performing their duties in public? [Objection omitted] A. I can imagine that there are some harms. I don't know that I would have an exhaustive list. BY MR. DALSEN: Q. Aside from your personal knowledge, does the District Attorney's Office have any view as to whether there are harms caused by individuals secretly recording police officers who perform their duties in public? [Objection omitted] A. We would look at each case individually to see the harms in any individual case, whether that be a harm to a person's right to privacy or other potential harms and evaluate that on a case-by-case basis.") (emphasis added); ECF No. 137-1 at 120:2-121:20 ("Q. And so as a general matter, the District Attorney's Office has no position on how any privacy interest of police officers performing their duties in public would be harmed and, instead, re-evaluate it on a case-by-case basis? [Objection

4

and re-reading of question omitted] A. It's difficult to answer that question because every situation is particular. There is a set of -- you know, you'd have to look at a situation as a whole to determine the factors. It would be very difficult to determine harms without specific facts, without considering a situation as a whole. <u>So I can't answer -- I can't answer the question in general. I can only look at it on a case and a factually led analysis</u>. BY MR. DALSEN: Q. And would you answer similarly for the other list of -- the other harms that you listed, including interference with officer duties or whether someone was assaulted, would you answer the same way? [Objection omitted] A. <u>Yes</u>.") (emphasis added).

At the same time, Defendant Conley has not identified a specific instance where, on the facts of an individual case, enforcing Section 99 against individuals who secretly record police officers performing their duties in public protected privacy, enhanced public safety, or prevented any harm. As such, Defendant Conley's assertion is not supported by record evidence under Local Rule 56.1 and Fed. R. Civ. P. 56(c)(1).

6. ***Defendant's Statement:*** Ms. Miller was not designated to provide testimony on behalf of the Suffolk District Attorney's Office concerning the governmental interests underlying G.L. c. 272, § 99.

***Plaintiffs' Response:*** **Disputed.** Defendant Conley, through sworn interrogatory responses, identified two memoranda of law filed in the *Project Veritas* case in response to Plaintiffs' interrogatory asking him to identify "each governmental interest" served by enforcing § 99 against individuals who secretly record police officers performing their duties in public. ECF No. 124-8 at 4-5. Those memoranda identified privacy and safety as potential interests. In turn, Defendant Conley, through his designee, Ms. Miller, was noticed under Fed. R. Civ. P. 30(b)(6) to testify to any harm caused by secretly recording police officers performing their

duties in public and any facts showing how enforcing § 99 against individuals who secretly record police officers performing their duties in public protects privacy, safety, or against any other harm.  ECF No. 137-2 at 5 (Topics 3-6).  As such, Ms. Miller was designated to testify as to any harms underlying the need to apply § 99 to individuals secretly recording police officers performing their duties in public, and any facts demonstrating how enforcing § 99 against individuals secretly recording police officers performing their duties in public  helps protect safety and privacy—that is, the only governmental interests Defendant Conley identified in his sworn interrogatory responses—as well as protect against any other harm.

Dated:  July 23, 2018

Respectfully submitted,

*/s/ Jessie J. Rossman*
Jessie J. Rossman (BBO No. 670685)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS
211 Congress Street
Boston, MA 02110
(617) 482-3170
jrossman@aclum.org

– and –

William D. Dalsen (BBO No. 689334)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
wdalsen@proskauer.com

*Attorneys for Plaintiff K. Eric Martin and René Pérez*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was filed via the Court's CM/ECF system and that and a copy will be sent automatically to all counsel of record on July 23, 2018.

                                       */s/ Jessie J. Rossman*
                                       Jessie J. Rossman (BBO No. 670685)