UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
PROJECT VERITAS ACTION FUND,        )
            Plaintiff,              )
                                    )        Civil Action No. 1:16-cv-10462-PBS
      v.                            )
                                    )
RACHAEL ROLLINS,                    )
            Defendant.              )
_____)
                                    )
K. ERIC MARTIN, et al.,             )
            Plaintiffs,             )
                                    )
      v.                            )        Civil Action No. 1:16-cv-11362-PBS
                                    )
WILLIAM GROSS et al.,               )
            Defendants.             )
_____)

## DISTRICT ATTORNEY RACHAEL ROLLINS'S
## RESPONSE TO COURT ORDER

On December 10, 2018, this Court issued a decision allowing the plaintiffs' motions for

summary judgment and ordering as follows:

> The Court declares [Mass. G.L. c. 272, § 99,] unconstitutional insofar as it
> prohibits audio recording of government officials, including law enforcement
> officers, performing their duties in public spaces, subject to reasonable time,
> place, and manner restrictions.  The Court will issue a corresponding injunction
> against the defendants in these actions.  The parties shall submit a proposed form
> of injunction . . . .

Defendant Rachael Rollins, the District Attorney for the Suffolk District, now responds to this

Court's order.  She does so without conceding that any judgment, or award of relief, for the

plaintiffs in these cases is proper.  She also does so without waiver of, or prejudice to, her rights:

to dispute any judgment or award of relief; to seek to modify any such judgment or award of

relief; or to notice and prosecute an appeal from all or part of any judgment entered in these

cases.

## **DECLARATORY VS. INJUNCTIVE RELIEF**

Although this Court has requested a "proposed form of injunction," D.A. Rollins respectfully suggests that no injunction is necessary or appropriate here, for two reasons.

Injunctive relief is coercive in nature, and is enforceable chiefly by contempt proceedings.  See D.B. Dobbs & C.L. Roberts, Law of Remedies, § 2.8 (3d ed. 2018).  But, "[i]f a less drastic remedy . . . [is] sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted."  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165-66 (2010).  Specifically, declaratory relief "has the same effect as an injunction in fixing the parties' legal entitlements."  Badger Catholic, Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010).  Indeed, declaratory relief here will have the practical effect of constraining all of the Commonwealth's prosecutors who enforce G.L. c. 272, § 99(C)(1), not just the one named in the captions of these cases.  And declaratory relief was "plainly intended" by Congress "to act as an alternative to the strong medicine of the injunction and to be utilized to test the constitutionality of state criminal statutes in cases where injunctive relief would be unavailable . . . ."  Steffel v. Thompson, 415 U.S. 452, 466 (1974).

Moreover, the defendants here are state and municipal government officials.  The federal judiciary "assume[s] that [they] will do their duty when disputed questions have been finally adjudicated and can rightly be expected to set an example of obedience to the law."  McLaughlin v. City of Lowell, 140 F. Supp. 3d 177, 197 n.16 (D. Mass. 2015) (declining to award injunctive relief after declaring ordinance to be unconstitutional in violation of the First Amendment); Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Worcester, 851 F. Supp. 2d 311, 321 n.5 (D. Mass. 2011) (same).  "Equitable remedies are powerful, and with power comes responsibility for its careful exercise.  These remedies can affect nonparties to the litigation in which they are sought;

and when . . . they are sought to be applied to officials of one sovereign by the courts of another,
they can impair comity, the mutual respect of sovereigns . . . ."  Hoover v. Wagner, 47 F.3d 845,
850 (7th Cir. 1995); accord Brooks v. N.H. Supreme Court, 80 F.3d 633, 635 (1st Cir. 1996)
("Balancing responsibility between federal and state government in a republic that assigns
interlocking sovereignty to each often requires federal courts to walk an unsteady tightrope[,] . . .
proceed[ing] in the spirit of cooperative federalism" but without "blind deference to state
autonomy.").  Thus, this response proposes a form of declaratory judgment.

## PROPOSED JUDGMENT

In response to the Court's order, and reserving all appellate and other rights (as noted
above), D.A. Rollins proposes the following judgment ("Proposed Judgment"):

A.  Massachusetts G.L. c. 272, § 99(C)(1), violates the First Amendment as
    applied to a person who willfully commits an Interception, attempts to commit
    an Interception, or procures any other person to commit an Interception or
    attempt to commit an Interception of an Oral Communication made by a
    Government Official, where that Government Official:

   1.  Is situated in a Public Space when he/she makes the Oral
       Communication; and

   2.  By the Oral Communication, is performing his/her official duties.

B.  This judgment shall not be construed to prevent the enforcement of G.L. c.
    272, § 99(C)(1), against any person who willfully commits an Interception,
    attempts to commit an Interception, or procures any other person to commit an
    Interception or attempt to commit an Interception of an Oral Communication
    made by:

   1.  A person who is not a Government Official; or

   2.  A Government Official who:

      a.  Is not situated in a Public Space when he/she makes the Oral
          Communication; or

      b.  Is not, by the Oral Communication, performing his/her official
          duties.

3

C.   For purposes of this judgment:

    1.   "Oral Communication" shall be defined in accordance with G.L. c. 272, § 99(B)(2);

    2.   "Interception" shall be defined in accordance with G.L. c. 272, § 99(B)(4);

    3.   "Public Space" shall be defined as a traditional or designated public forum; and

    4.   "Government Official" shall be defined as any person who, at the time of the Interception:

        a.   Holds elected governmental office;

        b.   Holds himself/herself out as a candidate for elected governmental office;

        c.   Is a law enforcement officer who is in uniform or is otherwise readily-identifiable as a law enforcement officer; or

        d.   Is an employee of any government or governmental agency who is making the Oral Communication as part of a public meeting such as a hearing before a governmental or quasi-governmental body, a press conference, a public speech, a rally, or other like event.

## DISCUSSION

### I.   General Approach

D.A. Rollins recognizes and appreciates the tremendous value of the First Amendment, particularly as it relates to public scrutiny and discussion of government affairs.  D.A. Rollins also recognizes, however, that surreptitious recording of some interactions by government employees, even in a public setting, may pose real risk of harm to public safety and unwitting third parties.

This Court, insofar as it has found a constitutional violation, has an obligation to order relief no broader than necessary to remedy that violation—an approach that supports federalism, comity, and respect for the State Legislature and the statute it enacted.  See generally Milliken v.

4

<u>Bradley</u>, 433 U.S. 267, 280-81 (1977); <u>Morgan v. O'Bryant</u>, 687 F.2d 510, 514 (1st Cir. 1982).

It also bears observing that G.L. c. 272, § 99, includes numerous provisions, only one of which, § 99(C)(1), is at issue in these cases.  So the Proposed Judgment begins with two premises:

1.  The Proposed Judgment uses as its starting point the existing G.L. c. 272, § 99(C)(1), by: (a) incorporating definitions relevant to the Proposed Judgment exactly as they appear in the statute; and (b) substantially mimicking the existing statutory language in portions of paragraphs A and B of the Proposed Judgment.

2.  The Proposed Judgment maintains the existing prohibition on nonconsensual surreptitious audio recording except where such recording is specifically permitted (i.e., rather than abandon the existing prohibition on nonconsensual surreptitious audio recording except where such recording is specifically forbidden).

Use of these premises promotes congruity between the statutory scheme and this Court's judgment, tailoring the relief to the specific conduct that this Court has deemed constitutionally protected.  It also minimizes the risk that this Court's judgment has unintended consequences.

Proceeding from these premises, the Proposed Judgment picks up where this Court's recent decision left off.  Specifically, this Court acknowledged that the terms "public space" and "government official" represent "loose ends," the definitions of which are not clear.  <u>Martin v. Gross</u>, 340 F. Supp. 3d 87, 108-09 (D. Mass. 2018).  The Court also did not spell out how the judgment should account for the interests of persons who are not government officials (deemed "Civilians" for purposes of this document) who happen to be within earshot when a government official is the object of a surreptitious audio recording.  The Proposed Judgment seeks to fill those gaps in accordance with the foregoing premises.

## II.   Public Spaces

The Proposed Judgment defines "public space" to include both traditional and designated public fora.  Such a definition has at least three virtues.

First, such a definition respects the rights of both governmental and private landowners to choose not to make a particular space available to the public for expressive activity.  See, e.g., Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 568-69 (1972) (property does not "lose its private character merely because the public is generally invited to use it for designated purposes"); United States v. Grace, 461 U.S. 171, 177-78 (1983) ("The Government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated."); cf. Mocek v. City of Albuquerque, 3 F. Supp. 3d 1002, 1071 (D.N.M. 2014) (no right to record TSA agents at airport security checkpoint, in part because airport terminal is not public forum).

Second, by drawing on existing First Amendment doctrine, such a definition avoids creating a whole new body of law unique to the context of this case.  This feature promotes congruity between the "right to surreptitiously record" recognized by this Court and broader First Amendment law.

Third, such a definition aligns the spatial aspect of this Court's judgment with the facts of every appellate decision that has yet recognized a "right to record" under the First Amendment. See Glik v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011) (recording occurred on Boston Common, "the apotheosis of a public forum"); Am. Civil Liberties Union v. Alvarez, 679 F.3d 583, 598 n.7 (7th Cir. 2012) ("traditional public fora like streets, sidewalks, plazas, parks, and other open public spaces"); Turner v. Lt. Driver, 848 F.3d 678, 683-84 (5th Cir. 2017) (sidewalk); Fields v. City of Phila., 862 F.3d 353, 356-57 (3d Cir. 2017) (sidewalk); Gericke v. Begin, 753 F.3d 1, 3-4 (1st Cir. 2014) (roadside); State v. Russo, 141 Haw. 181, 185-86 (2017) (roadside).

### III.   **Government Officials**

The Proposed Judgment defines "government official" to include three general categories: (1) elected officials and candidates for elected office; (2) law enforcement officers who are identifiable as such; and (3) other government employees addressing a public meeting or event.  Although not all of these categories spring directly from the doctrine, their precise and targeted nature accords with this Court's obligation not to strike down more of the statute than necessary.  Their precision also appropriately reflects the fact that surreptitious recording of some interactions by government employees, even in public settings, may carry real risk of harm.

The first category would permit appropriate surreptitious recording of those who hold or seek elected office.  This treatment is consistent with the longstanding recognition that elected officeholders are uniquely suitable for public scrutiny, comment, and criticism.  See, e.g., Gertz v. Robert Welch, Inc., 418 U.S. 323, 344 (1974) ("An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs.  He runs the risk of closer public scrutiny than might otherwise be the case.").

The second category would permit appropriate surreptitious recording of uniformed or otherwise readily-identifiable law enforcement officers, a group of public employees whose special nature has been reflected in the facts of every appellate decision that has yet recognized a "right to record" under the First Amendment.  See Glik, 655 F.3d at 80; Gericke, 753 F.3d at 1; Alvarez, 679 F.3d at 607; Fields, 862 F.3d at 358-60; Russo, 141 Haw. at 189-94; Turner, 848 F.3d at 690.  The qualifier is important, because officers frequently perform public duties in plainclothes or undercover precisely because public scrutiny—including being surreptitiously recorded without their knowledge—would impair their safety and effectiveness.  In addition to

uniformed police, the "otherwise readily-identifiable" qualifier is intended to include an officer whose badge, firearm, or other indicia of office is visible.

The third category would permit appropriate surreptitious recording of any government employee who speaks as part of a meeting or event that is, effectively, public in nature.  The language used by the Proposed Judgment to define that category mimics an Oregon statute that permits nonconsensual recordings under such circumstances (albeit when made "with an unconcealed recording device").  Or. Rev. Stat. § 165.540(6)(a).  This category is intended to cover gatherings that are plainly suitable for public scrutiny because they are held out as such.  Because this category requires the presence of an organized "meeting" or "event," it is not sufficient that a government employee simply makes an interpersonal oral communication over which he/she has no reasonable expectation of privacy.  Cf. State v. Bichsel, 101 Or. App. 257, 261 n.3 (1990) ("mere encounter" with another person is not "meeting" for purpose of statute).

## IV.   Surreptitious Recording of Those Who Are Not Government Officials

The Proposed Judgment also accounts for the privacy interests implicated by surreptitious audio recording of Civilians who are within earshot when a government official is the object of a surreptitious recording.  Those civilians' oral communications are far removed from the First Amendment interest animating this Court's recognition of a "right to surreptitiously record"— that is, the "protect[ion] and promot[ion of] the free discussion of governmental affairs."  Martin v. Gross, 340 F. Supp. 3d 87, 96-97 (D. Mass. 2018) (quoting Glik, 655 F.3d at 82); accord Alvarez, 679 F.3d at 597-99.  And Civilians have privacy rights and interests that, as the law frequently recognizes, are different from those of government actors.  See, e.g., 5 U.S.C. § 552(b)(6) (federal Freedom of Information Act exempting from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy"); Mass. G.L. c. 4, § 7(26)(c) (state Public Records Act providing

similar exception); <u>Gertz</u>, 418 U.S. at 345-47 (heightened standard that government official must

meet to establish liability for libel does not apply to private citizens, even those who participate

in matters of public interest).

The Proposed Judgment responds to these considerations by specifying that G.L. c. 272,

§ 99(C)(1), remains enforceable with respect to actual and attempted interceptions of the oral

communications of a person who is not within the definition of "Government Official" (or of a

Government Official who is not in a public space or is not, by the oral communication,

performing his/her official duties).  This means that a person may surreptitiously record his/her

own oral communications to a Government Official.  It also means that a person may not

surreptitiously record another Civilian's oral communications to, or within earshot of, a

Government Official where the other Civilian is not aware that the recording is being made.[1]

But, in that situation, the person seeking to record remains entitled to the protection of <u>Glik</u> and

thus may continue to record the other Civilian's oral communications in an unconcealed manner.

<div style="margin-left: 40%;">

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Eric A. Haskell
_____
Eric A. Haskell, BBO No. 665533
Matthew P. Landry, BBO No. 690441
Assistant Attorneys General
One Ashburton Place
Boston, Massachusetts  02108
617-963-2855
eric.haskell@state.ma.us

</div>

March 11, 2019

---

[1] Where a third party Civilian <u>is aware</u> that such a recording is being made, there is no "Interception" under G.L. c. 272, § 99(B)(4) and paragraph C(2) of the Proposed Judgment.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this document will be sent electronically by the ECF system to attorneys of record identified on the Notice of Electronic Filing.

*/s/ Eric A. Haskell*
_____

March 11, 2019                                Eric A. Haskell
                                              Assistant Attorney General